# Wang Hecker LLP

305 Broadway, Suite 607
New York, New York 10007

Heather Gregorio
212.620.2608 tel
212.620.2610 fax

hgregorio@wanghecker.com

**By ECF**

February 14, 2025

The Honorable Analisa Torres
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    *Graves v. Combs et al.*, No 24 Civ. 07201 (SDNY) (AT)

Dear Judge Torres:

    This firm, along with Allred Maroko & Goldberg, represents Plaintiff Thalia Graves ("Plaintiff"). We write in response to Defendant Sean Combs's February 7, 2025 letter, ECF Doc. No. 49 ("Def. Letter"), regarding his anticipated motion to dismiss. We oppose the motion in full, as his arguments are without merit.

    This case arises from the forcible and violent rape of Plaintiff by Defendant Combs and Defendant Joseph Sherman in or around the summer of 2001. *See* ECF Doc. No. 47 ("AC") at ¶ 1. Plaintiff was twenty-five at the time and dating one of Combs' employees; Combs lured her into meeting both Defendants by telling her he wanted to discuss his concerns about her then-boyfriend's performance at work. *Id.* at ¶¶ 2, 21. After Defendants picked Plaintiff up in a car, they gave her a drink that led her to feel lightheaded, dizzy, and physically weak, and then drove her to the Bad Boy studio in Manhattan. *Id.* at ¶¶ 2, 22-24. Soon after arriving at the studio, Plaintiff lost consciousness. *Id.* at ¶ 24. She awoke bound and restrained. *Id.* at ¶¶ 2, 25. Defendants thereafter subjected her to brutal sexual and physical abuse, whereby Combs raped her anally and vaginally, and Sherman slapped Plaintiff and repeatedly forced his penis into her mouth. *Id.* at ¶¶ 26-32. This attack led to years of emotional harm, including Plaintiff's ongoing struggles with suicidal thoughts. *Id.* at ¶ 4, 37-44. On November 27, 2023, Plaintiff learned that Combs and Sherman had video-recorded the rape and had shown the video to multiple men while making derogatory comments about Plaintiff and her former boyfriend, *id.* at ¶¶ 45-51. Multiple individuals reported to her that Sherman had a practice of non-consensually recording women engaging in sexual acts and selling and circulating the videos as pornography. *Id.* at ¶¶ 46-48.

    Defendant Combs states in his letter without any basis that Ms. Graves filed this action "without credible evidence." *See* Def. Letter, at 1. Discovery will reveal that Plaintiff in fact disclosed the brutal attack to several witnesses shortly after it happened, including within minutes of leaving the Bad Boy studio. Combs also places great weight on text messages that Ms. Graves's former boyfriend shared with reporters

since this lawsuit was filed, and of her former boyfriend's interpretation of them. Not only do such messages appear to be incomplete and taken out of context, but in any event, nothing in them contradicts Ms. Graves's account of the rapes and certainly is not a basis for any motion to dismiss.

Most importantly for purposes of Defendant's anticipated motion to dismiss, his legal arguments are without basis and should be rejected. First, Plaintiff's cause of action under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") is not time-barred. The 2022 Amendments to the VGMVPA provide a two-year revival window from March 1, 2023 through March 1, 2025 for previously time-barred claims, *see* N.Y.C. Admin. Code § 10-1105(a), and this action was filed squarely within that window on September 24, 2024. *See* ECF Doc. No. 1 (Complaint).

Neither the Adult Survivors Act, CPLR § 214-j ("ASA"), nor the Child Victims Act, CPLR § 214-g ("CVA") pre-empt the statute's revival provision; to the contrary, the 2022 Amendments to the VGMVPA fall well within New York City's power to adopt local laws pertaining to the "conduct, safety, health and well-being of persons" and are not inconsistent with the state constitution or general state laws. *Doe v. Black*, 23 Civ. 6418, 2024 WL 4335453 ("*Black*"), at *3 (S.D.N.Y. Sept. 27, 2024); *see also Doe v. Combs*, 23 Civ. 10628, 2024 WL 4987044 (S.D.NY. Dec. 5, 2024). "[T]he mere fact that a local law may deal with some of the same matters touched upon by [s]tate law does not render the local law invalid." *Police Benevolent Ass'n of City of New York v. City of New York*, 40 N.Y.3d 417, 425 (2023). As Judge Clarke explained in *Black*, "t[]he state has made no statements evincing a desire to fully control the issue of statutes of limitation in child sexual offense cases," *Black*, at *4, nor has Defendant Combs pointed to any statements evincing a comparable desire regarding adult sexual offense cases. The legislature's statements about its intention to benefit child and adult sexual assault victims are "not the same as 'an expression of need for uniform State-wide control.'" *Id.* The VGMVPA instead complements and serves the same purposes as the CVA and ASA much like the New York City Human Rights Law complements and serves the same purposes as the New York State Human Rights Law despite that those laws "overlap[] substantially." *Id.*

Defendant Combs relies heavily on a provision in the ASA stating that its revival window applies "[n]otwithstanding any provision of law which imposes a period of limitations to the contrary." Def. Letter at 2 (quoting N.Y. CPLR § 214-j). Defendant's attempt to twist that language to support dismissal of Plaintiff's claims misconstrues the purpose and scope of the statutes at issue. The ASA was passed to "prospectively increase . . . statutes of limitations for a subset of sexual offenses committed against adults" and to thereby provide "survivors of these heinous crimes enough time to pursue justice," 2021 N.Y. S. B. 66, Comm. Rep. The line Defendant cites does just that in ensuring that the ASA's revival provisions are not limited by a more restrictive statute. Nothing in the ASA evinced an intention to prevent survivors from bringing claims specifically tied to gender violence, under a different statute with

a less restrictive statute of limitations solely because there is some overlap between the conduct covered by the statutes.

The CVA "does not come close to enacting a comprehensive scheme" of the type that led prior courts to find field preemption when faced with detailed and complex regulations regarding steam electric generating facilities, employee safety standards and procedures, minimum wage requirements, or liquor licensing and enforcement procedures. *Black*, 2024 WL 4335453, at *6. Again, the same logic applies to the ASA. With neither statute has the state "create[d] a commissioner or board with investigatory or enforcement power"; "impose[d] direct controls at the local level" or "set forth comprehensive procedures for administrative and judicial review." *Id.* The two acts do not contain stand-alone causes of action, let alone comprehensive regulatory schemes that would conflict with regulations imposed by a local law.

The ASA and CVA likewise do not preempt the VGMVPA through conflict preemption. The "fact that both the state and local laws seek to regulate the same subject matter does not in and of itself give rise to an express conflict," *Black*, at *6 (quoting *Garcia v. New York City Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 617 (2018)); there must be a "head-on collision" between the statutes, *New York State Ass'n for Affordable Housing v. Council of City of New York*, 141 A.D.3d 208, 215 (1st Dep't 2016). The VGMVPA "does not curtail or take away a right or benefit expressly given by the state," *id.*; instead, the statutes unquestionably "further the same goals" of "further[ing] civil rights causes of action" and of giving survivors of sexual abuse and gender-motivated violence "more time to pursue civil actions by extending the statute of limitations." *Black*, at *7.

A close look at the ASA, CVA, and VGMVPA confirms that there is no direct conflict between them. The conduct prohibited by the statutes does not even fully overlap. The VGMVPA prohibits all crimes of violence *motivated by gender* in New York City, while the CVA and ASA address only conduct that would violate certain specified penal laws. *See* N.Y.C. Admin. Code §§ 10-1103, 10-1104; CPLR 214-g; CPLR 214-j. The VGMVPA provides its own cause of action with specific types of relief including compensatory and punitive damages, injunctive and declaratory relief, and attorneys' fees and costs, whereas the ASA and CVA merely revived the statute of limitations for other civil claims. *See id.*

The First Department's decision in *Engelman v. Rofe*, 194 A.D.3d 26 (1st Dep't 2021) is also instructive. The Court addressed a closely related question – whether the VGMVPA's original seven-year statute of limitations was preempted by the one-year statute of limitations for assault and battery under New York State law. It held that the VGMVPA's "construct is consistent with the City's 'broad policing power' to enact legislation to protect its residents from discrimination, including gender-related violence" and that the longer limitations period in the VGMVPA was not preempted. 194 A.D.3d at 31-32. While the case did not address the VGMVPA's revival provision, Defendant is wrong that the case has no relevance – a New York appellate

court concluding that a state law addressing the statute of limitations for sexual assault claims did not preempt a longer statute of limitations within the VGMVPA's statutory text strongly supports the same result here.

We respectfully submit that the two recent decisions that Defendant cites – *Bellino v. Tallarico* and *Parker v. Alexander* – are wrongly decided. We believe they will be reversed, whether in the Second Circuit's consideration of the *Black v. Doe* interlocutory appeal, *see* Docket No. 24-3025 (2d Cir.), or otherwise.

Plaintiff has also sufficiently pleaded her claims under N.Y. Civil Rights Law § 52-B and N.Y.C. Admin. Code § 10-180 and is entitled to discovery regarding how and when the video of her rape was circulated. Specifically, Plaintiff has pleaded that "on or around November 27, 2023 . . . she learned for the first time that Combs and Sherman had video-recorded the horrific rape twenty-two years before and had shown the video to multiple men, seeking to publicly degrade and humiliate both Plaintiff and her boyfriend;" AC at ¶ 5; that her former boyfriend detailed to her how he had been present when Sherman and Combs "showed him and a group of men . . . the video of Plaintiff being raped," "on a handheld camera . . . at the Bad Boy studio" and that "Combs, Sherman, and some of the other men made derogatory comments about the former boyfriend's relationship with Plaintiff, in an attempt to shame him into cutting ties with Plaintiff and to cause her further emotional harm and embarrassment." *Id.* at ¶¶ 46-47. She has alleged that on information and belief, "Defendants continued to show the video of the rape to others over the years and through to the present and/or sold the video as pornography," and that her former boyfriend disclosed to her that "Combs and Sherman had a pattern and practice of non-consensually recording women engaging in sexual acts and making those videos available to the public, including by selling tapes as pornography;" *id.* at ¶¶ 46, 48; and that a different "Bad Boy artist later corroborated in a text message that Sherman 'use[d] to sell porn of him doing this to chix' and 'did that to a lot of women.'" *Id.*

Given these detailed allegations, we are perplexed by Defendant's position that "the Amended Complaint alleges no facts (nor could it) giving rise to a reasonable inference that any purported dissemination of any purported video was done with the intent to harass or harm Plaintiff." Def. Letter at 3. As we noted in our January 29th response, it is hard to conceive of stronger allegations showing intent to harass or harm Plaintiff than an eyewitness's report that the Defendants showed the video to a group of men while making derogatory comments about Plaintiff and her former boyfriend. Moreover, Defendant's statement that the fact that "Plaintiff alleges that Mr. Combs and Sherman first made and disseminated the video . . . in 2001 . . . mean[s] Plaintiff's claim has long-since expired" is simply incorrect; the statutes are violated by the "*disseminat[ion] or publish[ing]*" (N.Y. Civ. Rights Law § 52-b(1); *see also* N.Y.C. Admin Code § 10-180 (emphasis added)) of such a video, and Plaintiff has alleged that Defendants continued to show the video to others over the years and through to the present. AC at ¶ 48. Plaintiff is entitled to discovery regarding the continued dissemination of the video including within the statute of limitations.

                                      Respectfully submitted,

                                      Heather Gregorio

cc:    All counsel by ECF