**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THALIA GRAVES,

                       Plaintiff,

      v.

SEAN COMBS AND JOSEPH SHERMAN,

                Defendants.

Case No. 24-cv-7201

**Oral Argument Requested**

**MEMORANDUM OF LAW IN SUPPORT OF**
**SEAN COMBS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**SHER TREMONTE LLP**
Erica A. Wolff
Michael Tremonte
Katie Renzler
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
EWolff@shertremonte.com
MTremonte@shertremonte.com
KRenzler@shertremonte.com

*Attorneys for Defendant Sean Combs*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

I.     PLAINTIFF'S GMVL CLAIM MUST BE DISMISSED BECAUSE IT IS
TIME-BARRED AND ANY PURPORTED REVIVAL IS PREEMPTED ...................... 5

     A.    Plaintiff's GMVL Claim Is Time-Barred .............................................. 5

     B.    New York State Law Preempts the GMVL's Purported Revival Window ............. 5

          1.    The CVA and the ASA Occupy the Field of Revival of Sexual
Offense-Related Claims, Including GMVL Claims ................................... 6

          2.    The GMVL Revival Provision Is Preempted Because It Conflicts
Directly with the CVA and the ASA ......................................................... 9

II.    PLAINTIFF'S "REVENGE PORN" CLAIMS ARE TIME-BARRED .......................... 12

III.   PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE
"REVENGE PORN" STATUTES .................................................................................. 14

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AJ Energy LLC v. Woori Bank,*
No. 18-CV-3735 (JMF), 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019) .............................. 4, 14

*Albany Area Builders Ass'n v. Town of Guilderland,*
74 N.Y.2d 372 (1989) .................................................................................................... 6

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................................... 4

*Bardwil Indus. Inc. v. Kennedy,*
No. 19-CV-8211 (NRB), 2020 WL 2748248 (S.D.N.Y. May 27, 2020) ................................. 17

*Bell Atl. Corp. v. Twombly,*
500 U.S. 544 (2007) ................................................................................................. 4, 17

*Bellino v. Tallarico,*
No. 24-CV-0712 (LAK), 2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024) .................................. 6

*Canon U.S.A., Inc. v. F & E Trading LLC,*
No. 15-CV-6015, 2017 WL 4357339 (E.D.N.Y. Sept. 29, 2017) ........................................ 18

*Chambers v. Time Warner, Inc.,*
282 F.3d 147 (2d Cir. 2002) ......................................................................................... 4

*Chwick v. Mulvey,*
81 A.D.3d 161 (2d Dep't 2010) ..................................................................................... 9

*Cubito v. Kreisberg,*
419 N.Y.S.2d 578 (2d Dep't 1979) ............................................................................... 13

*DJL Rest. Corp. v. City of New York,*
96 N.Y.2d 91 (2001) ..................................................................................................... 6

*Doe v. Black,*
No. 23-CV-6418 (JGLC), 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024) ................. 8, 9, 11, 12

*Doe v. Combs,*
No. 23-CV-10628 (JGLC), 2024 WL 4987044 (S.D.N.Y. Dec. 5, 2024) .................................. 8

*Doe v. State Univ. of New York Purchase College,*
617 F. Supp. 3d 195 (S.D.N.Y. 2022) ............................................................................ 5

*Elias v. City of New York*,
   No. 10-CV-5495 (SLT), 2010 WL 5475809 (E.D.N.Y. Dec. 30, 2010).....................................17

*Forest Park Pictures v. Universal Television Network, Inc.*,
   683 F.3d 424 (2d Cir. 2012) ........................................................................................................4

*Gander Mountain Co. v. Islip U-Slip LLC*,
   923 F. Supp. 2d 351 (N.D.N.Y. 2013)........................................................................................14

*Global Network Comc'ns, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006) ......................................................................................................11

*Josie v. City of New York*,
   No. 21-CV-2486 (ARR), 2023 WL 3765063 (E.D.N.Y. June 1, 2023) .....................................18

*K.W. v. Cnty. of Rockland*,
   217 N.Y.S.3d 818 (Sup. Ct. 2024) ...............................................................................................7

*Mira v. Harder (Evans)*,
   177 A.D.3d 426 (1st Dep't 2019)................................................................................................15

*Nesbeth v. New York City Mgmt. LLC*,
   No. 17-CV-8650 (JGK), 2019 WL 110953 (S.D.N.Y. Jan. 4, 2019).........................................17

*Oawlawolwaol v. Boy Scouts of Am.*,
   No. 21-CV-4714 (PKC) (JMW), 2021 WL 4355880 (E.D.N.Y Sept. 24, 2021) .......................7

*Parker v. Alexander et al.*,
   24-CV-4813 (LAK), 2025 WL 268436 (S.D.N.Y. Jan. 22, 2025) ....................................passim

*Police Benevolent Ass'n of City of New York, Inc. v. City of New York*,
   40 N.Y.3d 417 (2023)...................................................................................................................5

*Ratermann v. Pierre Fabre USA, Inc.*,
   651 F. Supp. 3d 657 (S.D.N.Y. 2023) ........................................................................................15

*Regina Metro. Co., LLC v. New York State Div. of House & Cmty. Renewal*,
   35 N.Y.3d 332 (2020)............................................................................................................11, 12

*S.A. v. Bell*,
   No. 950279/2021, 2023 WL 8653131 (Sup. Ct. N.Y. Cnty. Dec. 14, 2023)...............................9

*Specht v. City of N.Y.*,
   15 F.4th 594 (2d Cir. 2021) ..................................................................................................16, 17

*Tantaros v. Fox News Network, LLC*,
   No. 17 CIV. 2958 (GBD), 2018 WL 2731268 (S.D.N.Y. May 18, 2018)................................ 18

**Statutes**

22 NYCRR § 202.72 ................................................................................................................. 8

N.Y.C. Admin. Code § 10-1105 ................................................................................................ 5

N.Y.C. Admin. Code § 10-180 ................................................................................... 12, 15, 18

N.Y. Civ. Rights Law § 52-b ............................................................................... 12, 13, 15, 18

N.Y. Jud. L. § 219-d .................................................................................................................. 7

N.Y. Jud. L. § 219-e .................................................................................................................. 7

**Rules**

CPLR § 214 ............................................................................................................................. 13

CPLR § 214-g ............................................................................................................. 7, 9, 10, 11

CPLR § 214-j ...................................................................................................................... 8, 10

Fed. R. Civ. P.12(b)(6) ......................................................................................................... 1, 5

This memorandum of law is respectfully submitted on behalf of Defendant Sean Combs ("Mr. Combs") in support of his motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing with prejudice the Amended Complaint ("AC") (ECF No. 47) as to him.

## PRELIMINARY STATEMENT

This action is based on allegations relating to a single encounter that purportedly occurred nearly twenty-four years ago, in or about the summer of 2001. Plaintiff Thalia Graves ("Plaintiff") falsely claims that Mr. Combs and Defendant Joseph Sherman ("Sherman" and, together, "Defendants") used the pretense of speaking with her in person about her boyfriend's employment with one of Mr. Combs' entities to sexually assault her and record themselves (on a handheld camera) doing so. AC ¶¶ 1, 21–30. Although Plaintiff purports to recall many details from the alleged assault (*see id.*), she does not allege that she witnessed the purported encounter being recorded, nor does she allege she has ever seen such a recording. Rather, she claims that twenty-two years later, in November 2023 (following a much-publicized settlement of claims against Mr. Combs by his ex-girlfriend), her ex-boyfriend told her that he had seen a video of her alleged assault decades earlier. Since Plaintiff commenced this action and made those allegations, that same ex-boyfriend has stated publicly that Plaintiff tried to bribe him with *three million dollars* to corroborate her story.

Relying on these implausible allegations, Plaintiff brings three claims against Mr. Combs and Sherman, all of which fail. First, Plaintiff's claim pursuant to New York City's Victims of Gender-Motivated Violence Protection Law ("GMVL") must be dismissed with prejudice because it is time-barred, and any purported revival of the decades-old claim is preempted. Plaintiff alleges she was assaulted in 2001. The GMVL's statute of limitations is seven years, meaning Plaintiff's claim expired in 2008 at the latest—*sixteen years* before she filed this lawsuit. Contrary to Plaintiff's contention, a recent amendment purporting to create a two-year

1

revival window for expired GMVL claims (the "GMVL Revival Provision"), does not save Plaintiff's decades-old claim because, as other decisions in this district have held, New York state law—which creates a comprehensive statutory scheme that occupies the field of revived sexual assault claims and that directly conflicts with the City's GMVL Revival Provision—preempts the GMVL Revival Provision.

Second, Plaintiff's claims under the New York City and New York State Revenge Porn Statutes must be dismissed because they are time-barred. The Amended Complaint alleges that the purported video was filmed and disseminated in 2001. Given that both Revenge Porn Statutes have a three-year statute of limitation, Plaintiff's claims expired in 2004, twenty years before she filed this action.

Finally, Plaintiff's claims under the New York City and New York State Revenge Porn Statutes fail because, among other things, her allegations are facially implausible and conclusory. The Amended Complaint impermissibly lumps both Defendants together, making accusations of serious misconduct in connection with the purported dissemination of a purported rape tape without identifying any details of the circumstances in which Mr. Combs purportedly disseminated such tape with intent to harm Plaintiff, and instead vaguely and conclusorily alleges that both Defendants engaged in such conduct for decades (even though Plaintiff concedes she never saw such a tape and pleads no details about its length, contents, whereabouts, or any subsequent instances of publication). The New York Appellate Division, First Department has held that a plaintiff (like Plaintiff here) who concedely has no firsthand knowledge that any intimate visual media even exists let alone that it was disseminated with the intent to harm and harass her, cannot maintain a revenge porn claim. This is consistent with well-settled law in the Second Circuit which precludes claims, like Plaintiff's claims here, premised on formulaic

recitations of the elements of a cause of action without identifying facts that support Plaintiff's far-fetched conclusions.

## **FACTUAL BACKGROUND**

In the Amended Complaint, Plaintiff claims that nearly twenty-four years ago, in or about the summer of 2001, Mr. Combs—by then already "a prominent rapper, record executive, and businessman" who was "a notable figure in the music and entertainment industry" (AC ¶ 16)— called Plaintiff (who was not in any way affiliated with any of Mr. Combs' businesses) so that they could "meet . . . in person to discuss" her "boyfriend's employment at Bad Boy." *Id.* ¶ 21. Mr. Combs then allegedly drove out to Queens with Sherman, picked up Plaintiff, and drove her back to a music studio in Manhattan. *Id.* ¶¶ 22, 24. Plaintiff claims (falsely) that when she, Mr. Combs, and Sherman arrived at the studio, Mr. Combs and Sherman raped her. *Id.* ¶¶ 1, 26, 30. She further accuses both Defendants of video-recording the purported assaults, though she does not allege she witnessed any such recording being made at the time or that she has ever seen any such recording. *Id.* ¶¶ 5, 47. To the contrary, Plaintiff alleges that she learned about the purported recording *twenty-two years* after the fact, when, in November 2023, her ex-boyfriend allegedly "confessed that years earlier" he and others had viewed such a tape. *Id.* ¶¶ 5, 45–46. While she vaguely asserts that Mr. Combs and Sherman "continued to show the video . . . over the years and through to the present and/or sold the video[,]" she does not allege any dates (approximate or otherwise) when such distribution or sale occurred, nor does she identify any "information" supporting her "belief" that any such video was circulated "through the present" (or ever). *Id.* ¶ 48.

Although Plaintiff pleads that her ex-boyfriend informed her about the alleged recording decades after the fact because he was inspired by the resolution of a completely separate lawsuit against Mr. Combs (*Id.* ¶ 46), that same ex-boyfriend has publicly discredited this narrative,

revealing that Plaintiff offered to pay him three million dollars (presumably from the proceeds she expects to recover in this lawsuit) to corroborate her allegations against Mr. Combs whom she said she was suing "[b]ecause he's the one that has the money[.]"[1]

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 570 (2007)). "A claim has 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012) (citation omitted). It is not enough to assert mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555. While a court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), a court "is not required to credit conclusory allegations unsupported by facts, . . . or to suspend common sense in conducting its analysis." *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019), *aff'd,* 829 F. App'x 533 (2d Cir. 2020).

---

[1]     Marc Griffin, *Diddy's Accuser's Ex-Boyfriend Claims He Was Bribed To Corroborate Her Story*, Vibe (Oct. 9, 2024), https://www.vibe.com/news/entertainment/diddy-accuser-ex-boyfriend-bribed-thaliagraves-1234930949/.

## ARGUMENT

**I.    PLAINTIFF'S GMVL CLAIM MUST BE DISMISSED BECAUSE IT IS TIME-BARRED AND ANY PURPORTED REVIVAL IS PREEMPTED**

The Court must dismiss Plaintiff's GMVL claim with prejudice because the statute of limitations has long since run and the revival window on which Plaintiff seeks to rely is preempted by state law.

### A.    Plaintiff's GMVL Claim Is Time-Barred

As relevant here, the GMVL carries a seven-year statute of limitations.  N.Y.C. Admin. Code § 10-1105(a).  Plaintiff's GMVL claim rests on conduct that allegedly occurred more than two decades ago, in 2001.  *See* AC ¶ 1 (pleading that the alleged events occurred "[i]n or around the summer of 2001").  As such, the statute of limitations on Plaintiff's GMVL claim expired in 2008 at the latest.  Because she did not bring her claim until 2024, her claim is unquestionably time-barred and must be dismissed with prejudice.  N.Y.C. Admin. Code § 10-1105(a); *see also Doe v. State Univ. of New York Purchase College*, 617 F. Supp. 3d 195, 204, 210 (S.D.N.Y. 2022) (explaining motion to dismiss based on statute of limitations is properly brought pursuant to Rule 12(b)(6) and dismissing action as time-barred).

### B.    New York State Law Preempts the GMVL's Purported Revival Window

Plaintiff's attempt to save her time-barred claim by relying on the 2022 GMVL amendment (AC ¶ 65), which purports to create a two-year revival window for expired GMVL claims, fails because this New York City revival provision is preempted by New York State law.  "The doctrine of preemption acts as a significant restriction on the home rule powers of municipalities.  Local laws may be inconsistent with and preempted by state law either because the legislature has occupied the relevant field of regulation," *i.e.*, field preemption, "or because the local law conflicts with state law," *i.e.*, conflict preemption.  *Police Benevolent Ass'n of City*

*of New York, Inc. v. City of New York*, 40 N.Y.3d 417, 423 (2023). Both preemption doctrines apply here. In January 2022, the New York City Council amended the GMVL by creating a two-year window, spanning from March 1, 2023 through March 1, 2025, for the revival of claims that were otherwise time-barred under the law (the "GMVL Revival Provision"). N.Y.C. Admin. § 10-1105. As Judge Kaplan has now held twice, New York State's Child Victims Act of 2019 (the "CVA") and Adult Survivors Act of 2022 (the "ASA") preempt that revival window on both field preemption and conflict preemption grounds. *Parker v. Alexander et al.*, 24-CV-4813 (LAK), 2025 WL 268436, at *2–4 (S.D.N.Y. Jan. 22, 2025); *Bellino v. Tallarico*, No. 24-CV-0712 (LAK), 2024 WL 1344075, at *1 (S.D.N.Y. Feb. 21, 2024). This Court should hold the same.

     1.     <u>The CVA and the ASA Occupy the Field of Revival of Sexual Offense-Related Claims, Including GMVL Claims</u>

Field preemption exists where the legislature "enact[s] a comprehensive and detailed regulatory scheme" in a particular area. *Albany Area Builders Ass'n v. Town of Guilderland*, 74 N.Y.2d 372, 377 (1989). Such preemption may be express or implicit. *DJL Rest. Corp. v. City of New York*, 96 N.Y.2d 91, 95 (2001). Implicit preemption occurs when the state legislature enacts such a complete regulatory scheme such that the local government is "precluded from legislating on the same subject matter unless it has received 'clear and explicit' authority to the contrary." *Id.* (citation omitted). The State's intent to occupy a field may be implied "from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area." *Albany Area Builders Ass'n*, 74 N.Y.2d at 377.

Through its enactment of the CVA in 2019 and the ASA in 2022, the New York State Legislature impliedly occupied the entire field of claim revival for certain sexual offense-related claims, including that alleged by Plaintiff. Specifically, the CVA and the ASA apply to "***every***

*civil claim or cause of action* brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered *as a result of conduct which would constitute a sexual offense* as defined in" Article 130 of the New York Penal Code committed against a child or an adult victim, respectively.  CPLR §§ 214-g, 214-j (emphasis added).  The CVA and the ASA each explicitly applies "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary."  CPLR §§ 214-g, 214-j.  Both statutory revival windows closed prior to Plaintiff's commencement of this litigation—the CVA's two-year window closed on August 14, 2021, and the ASA's one-year window closed on November 24, 2023.  *Oawlawolwaol v. Boy Scouts of Am.*, No. 21-CV-4714 (PKC) (JMW), 2021 WL 4355880, at *1 n.1 (E.D.N.Y Sept. 24, 2021); *K.W. v. Cnty. of Rockland*, 217 N.Y.S.3d 818, 818 (Sup. Ct. 2024).

Considering these provisions, Judge Kaplan concluded that the CVA and ASA are "comprehensive" and "detailed" and therefore evince legislative intent to occupy the entire "field of revival of civil claims arising from violations of state sexual offense penal statutes," like the GMVL Revival Provision "to the extent that they purport to revive the same category of claims." *Parker*, 2025 WL 268436, at *2.  Additional measures, which Judge Kaplan did not explicitly consider, lend further support to his conclusion that the ASA and CVA constitute a "detailed and comprehensive" regulatory scheme.  For example, the state legislature instructed the chief administrator of the courts to promulgate rules for adjudicating revived actions brought pursuant to the CVA and the ASA.  N.Y. Jud. L. §§ 219-d, 219-e.  The state courts, in turn, implemented a comprehensive infrastructure for litigating CVA and ASA cases, including the passage of Uniform Rule § 202.72 entitled "Actions Revived Pursuant to CPLR 214-g" which created a dedicated part of the New York Supreme Court in each Judicial District to hear CVA cases,

mandated training of justices, hearing officers, and ADR neutrals in subjects related to sexual assault, and recommended a uniform schedule for pre-trial proceedings in such cases which specified timeframes and intervals for preliminary conferences, status conferences, discovery completion, dispositive motions, and trial, and led to the issuance of global Case Management Orders governing the administration of all such cases.[2]  *See* 22 NYCRR § 202.72.

As Judge Kaplan explained in holding that the statutory scheme created by the CVA and the ASA together preempt the GMVL revival window, "[t]he sequence of enactments confirms the legislature's intent to occupy the field."  *Parker*, 2025 WL 268436, at *3.  The GMVL Revival Provision was passed four months *before* the ASA was passed.  If the state wanted to carve GMVL revival claims out of the ASA's ambit, it could have—but it did not.  Instead, the legislature directed that the ASA apply to "'every civil claim or cause of action' brought by adult victims of sexual offenses pursuant to Article 130 of the New York Penal Code, . . . 'notwithstanding any provision of law which imposes a period of limitation to the contrary.'"  *Id.* (quoting CPLR § 214-j).  "The legislature could have stated that the ASA applies notwithstanding any *more restrictive* limitations period," but it did not.  *Id.*

As part of his decision holding that field preemption applies, Judge Kaplan addressed directly Judge Clarke's somewhat inconsistent holding in *Doe v. Black*, No. 23-CV-6418 (JGLC), 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024) (which was incorporated by reference by Judge Clarke in *Doe v. Combs*, No. 23-CV-10628 (JGLC), 2024 WL 4987044, at *2 (S.D.N.Y. Dec. 5, 2024)).  *Parker*, 2025 WL 268436, at *4.  Judge Kaplan identified two main reasons why he

---

[2]      *See, e.g.*, *In re: Child Victims Act NYC Litigation*, Supreme Court, Bronx, Kings, New York, Queens and Richmond Counties, Case Management Order No. 1,https://www.nycourts.gov/legacypdfs/courts/1jd/supctmanh/Rules/CVA-litigation.pdf (last visited March 17, 2025).

"respectfully disagrees" with *Black*'s holding that the CVA was not sufficiently comprehensive and detailed to warrant field preemption.  First, in *Black*, the court addressed whether only the CVA, standing alone without the ASA, preempts the GMVL revival window.  *Id.*  By ignoring the ASA, *Black* failed to appreciate the full scope of the regulatory scheme.  *Id.*  Second, Judge Clarke incorrectly minimized the CVA's scope by comparing it to other regulatory schemes she said were more comprehensive, but Judge Kaplan points out that those comparator schemes are simply "more *complex[]*," not more comprehensive.  *Id.*

The only court to have squarely addressed the precise issue presented here—that is, whether claims brought pursuant to the GMVL Revival Provision are preempted by the ASA, and in particular the ASA taken together with the CVA—has confirmed (twice) that they are.  To the extent the reasoning in *Black* (whose holding is limited to the CVA) conflicts with that conclusion, *Parker* has the better of the argument, and the Court should similarly hold that the ASA and CVA preempt the GMVL Revival Provision on field preemption grounds.

2.      The GMVL Revival Provision Is Preempted Because It Conflicts Directly with the CVA and the ASA

State law preempts the GMVL Revival Provision for the separate and independent reason that its revival window conflicts directly with the ASA and the CVA.  "[C]onflict preemption occurs when a local law prohibits what a state law explicitly allows, or when a state law prohibits what a local law explicitly allows."  *Matter of Chwick v. Mulvey*, 81 A.D.3d 161, 168 (2d Dep't 2010).  The CVA and the ASA applied to expired GMVL claims.  *See, e.g.*, CPLR §§ 214-g, 214-j (applying to "every civil claim or cause of action . . .  for . . . injury . . . suffered as a result of conduct which would constitute a sexual offense"); *S.A. v. Bell*, No. 950279/2021, 2023 WL 8653131, at *1 (Sup. Ct. N.Y. Cnty. Dec. 14, 2023) (discussing GMVL claim brought pursuant to CVA).  As such, the ASA permitted previously time-barred GMVL claims to be brought only

9

between November 24, 2022, and November 24, 2023 (CPLR § 214-j), whereas the GMVL

Revival Provision purported to permit the revival of previously time-barred GMVL claims only

between March 1, 2023 and March 1, 2025 (N.Y.C. Admin. § 10-1105(a)).  "The ASA thus is

unambiguously inconsistent with the start date of the [GMVL] revival window because the ASA

specifically permits the conduct the local law does not—bringing [GMVL] claims between

November 24, 2022, and March 1, 2023."  *Parker*, 2025 WL 268436, at *3 (internal quotation

marks and citation omitted).  The ASA's end date is likewise inconsistent with that of the GMVL

Revival Provision, which purports to permit conduct prohibited by state law by extending the

GMVL claim revival period for an extra fifteen months, from November 2023 until March 2025.

*Id.*  Looked at differently, the GMVL Revival Provision can also be read to "forestall claims

under that ASA because the [GMVL's Revival Provision] did not allow for claims to be filed

before March 2023," whereas the ASA permitted such claims to be brought as early as November

2022.  *Id.* at *4.

    The inconsistency is even more pronounced between the CVA and the GMVL Revival

Provision.  Because the CVA revival window closed before the GMVL revival window even

opened, the GMVL Revival Provision impermissibly allows the revival of GMVL claims by

minor victims wholly outside of the revival window allowed by the CVA.  *Compare* CPLR

§ 214-g, *with* N.Y.C. Admin. § 10-1105(a).  As a result of the misalignment in the GMVL's

revival window, on the one hand, and the ASA's and CVA's revival windows, on the other hand,

the GMVL Revival Provision conflicts with the ASA's and CVA's express provisions that

plaintiffs bring claims pursuant to those statutes' temporal parameters "[n]otwithstanding any

provision of law which imposes a period of limitation to the contrary."  CPLR §§ 214-g, 214-j.

The conflict here between state law and local law is especially pronounced and significant because it arises in the context of claim revival. "When the legislature has intended to revive time-barred claims, it has typically said so unambiguously, providing a limited window when stale claims may be pursued." *Regina Metro. Co., LLC v. New York State Div. of House & Cmty. Renewal*, 35 N.Y.3d 332, 371 (2020). As Judge Kaplan concluded, Plaintiff's interpretation, which would allow local law to open and close the revival window without regard for the ASA's and CVA's prescribed revival windows, "would conflict with the legislature's creation of such a limited window." *Parker*, 2025 WL 268436, at *3. The GMVL Revival Provision therefore cannot stand.[3]

As Judge Kaplan observed in *Parker*, in *Black*, the court did not address whether the ASA's and the GMVL's revival windows conflicted, nor did it address "the plain language of the CVA and ASA, both of which apply '[n]otwithstanding any provision of law which imposes a period of limitation to the contrary.'" *Parker*, 2025 WL 268436, at *4 (alteration in original) (quoting CPLR §§ 214-g, 214-j). In light of this language and for the reasons set forth above,

---

[3]    Indeed, public filings, of which the Court may take judicial notice, *Global Network Comc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006), reflect that even the plaintiffs' bar understood that the GMVL Revival Provision would not operate to revive sexual assault claims outside the State's revival windows for such claims: Notwithstanding the passage of the VGM's lookback window in 2022, in New York City (where the GMVL lookback was available), the number of ASA cases filed in the last month of the ASA window was more than twenty times the monthly average in the preceding months. See Affidavit of Samantha Luevanos, dated November 8, 2024 ("Luevanos Affidavit") at ¶¶ 6–7, 9–10 and Exhibit B thereto. In all other counties in New York State (where the VGM lookback was not available), the number of ASA cases filed in the last month of the ASA window was approximately nineteen times the monthly average in the preceding months. *Id.* at ¶¶ 4–5, 8, 11–12 and Exhibit A thereto.

If the New York City plaintiffs' bar actually believed the GMVL's revival provision could revive otherwise time-barred sexual assault claims, such as expired GMVL claims, they would not have rushed to file their claims within the state law revival window, let alone have done so at an even faster rate than claims filed elsewhere in New York State (where no GMVL revival even arguably applied).

Judge Kaplan concluded that the *Black* court's reasoning that the CVA and the GMVL Revival Provision did not conflict "because they further the same goals" and "were both enacted to further civil rights causes of action" was insufficient to hold that conflict preemption does not apply. *Id.* (quoting *Black*, 2024 WL 4335453, at *7).

Furthermore, to the extent there is any doubt the ASA and/or CVA preempts GMVL's revival window, that doubt must be resolved in favor of preemption because "[r]evival is an extreme exercise of legislative power" and "[u]ncertainties are resolved against consequences so drastic." *Regina Metro. Co., LLC*, 35 N.Y.3d at 371 (citation omitted). To balance this extreme exercise of legislative power and its "upsetting [of] the strong public policy favoring finality, predictability, fairness and repose served by [the] statute[] of limitations," the state legislature provides only "a limited window when stale claims may be pursued." *Id.* at 371–72. Here, the New York State Legislature made the deliberate choice to revive stale claims arising from sexual misconduct for only limited periods of time pursuant to the CVA and ASA. A local law cannot be permitted to upset that policy determination by creating an enlarged revival window for claims covered by the ASA's and CVA's revival windows. For these reasons, the GMVL claim must be dismissed as untimely.

For the reasons stated above, the Court should follow Judge Kaplan's well-reasoned decision in *Parker* and hold that the CVA and the ASA preempt the GMVL's purported revival window on both field preemption and conflict preemption grounds and dismiss Plaintiff's GMVL claim with prejudice as time-barred.

## II.    PLAINTIFF'S "REVENGE PORN" CLAIMS ARE TIME-BARRED

Based on her facially implausible and vague allegations about a videotape she has never seen, Plaintiff also seeks to recover damages pursuant to New York Civil Rights Law § 52-b (the "State Revenge Porn Statute") and New York City Administrative Code § 10-180 (the "NYC

Revenge Porn Statute," and together with the State Revenge Porn Statute, collectively, the "Revenge Porn Statutes"). Plaintiff's claim under each statute is time-barred and therefore must be dismissed with prejudice.

Because the NYC Revenge Porn Statute does not provide a statute of limitations, it is subject to the default three-year statute of limitations set forth in CPLR § 214(5), which, as relevant here, provides that "an action to recover damages for a personal injury" must "be commenced within three years." As the Practice Commentaries to CPLR § 214(5) make clear, "the date-of-injury accrual rule applied to CPLR 214(5) does not include a discovery component. 'That the injury suffered may not be perceived until much later provides no escape from the statute.'" Vincent C. Alexander, Practice Commentaries, McKinney's Cons. Laws of NY, CPLR 214(5) (cleaned up) (quoting *Cubito v. Kreisberg*, 419 N.Y.S.2d 578, 581 (2d Dep't 1979), *aff'd*, 51 N.Y.2d 900 (1980)). Similarly, claims under the New York State Revenge Porn Statute must also be brought within three years of the alleged dissemination or publication. N.Y. Civ. Rights Law § 52-b(6)(a).[4]

Here, Plaintiff alleges (falsely) that Mr. Combs and Sherman made the video in 2001 and that the video was allegedly disseminated shortly after the alleged assault in 2001. AC ¶¶ 5, 46. Accordingly, her claim expired in 2004, twenty years before she filed this lawsuit.[5] As such,

---

[4]    While the State Revenge Porn Statute (unlike the NYC Revenge Porn Statute) permits claims to be brought within a year of the date on which the plaintiff discovers or reasonably should have discovered the publication, Plaintiff's self-serving, and facially implausible allegation that she learned of the purported video for the first time in November 2023 (AC ¶ 45) should not operate to extend the accrual date because even accepting that assertion as true, Plaintiff does not plead that she actually "discover[ed] . . . the dissemination or publication of such image" at that later date (or ever); indeed, even as of the filing of her Amended Complaint she concedes she has never actually discovered any such image. *See generally* AC.

[5]    Plaintiff's allegations that the purported video was disseminated again on later unidentified dates in unidentified manners (AC ¶¶ 48, 50, 68, 79) are too impossibly vague and

Plaintiff's claim has long-since expired, and her cause of action pursuant to the NYC Revenge Porn Statute is time-barred.

## III.   PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE "REVENGE PORN" STATUTES

The allegations in the Amended Complaint should also be dismissed because they fail to state claims under the Revenge Porn Statutes.

Over roughly the past decade, so-called "revenge porn" statutes have been passed in a number of states and municipalities to combat the abusive use of digital media in intimate partner relationships. *See, e.g.*, Declaration of Erica A. Wolff dated March 18, 2025 ("Wolff Decl."), Ex. A, New York City Council, Committee on Public Safety, Report of the Governmental Affairs Division on Proposed Introductory Bill. No. 1267-A, November 1, 2017 at 2 (hereinafter, the "Committee Report") (explaining "revenge porn is often used as a form of domestic violence, where abusers 'use the threat of disclosure to keep their partner under control' and fulfill the threat once their partner leaves." (citation omitted)). A quintessential example of revenge porn is an abusive domestic partner who threatens the disclosure of intimate images to gain control over their partner. *Id.* at 5.

To state a claim under the State Revenge Porn Statute, a plaintiff must plead that: (1) she was depicted in a "still or video image," (2) the image was published or disseminated by a person "for the purpose of harassing, annoying or alarming" the plaintiff, (3) she "had a reasonable expectation that the image would remain private," (4) the image depicts "unclothed or exposed

---

conclusory to warrant consideration for purposes of determining a later accrual date. *See Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 364 (N.D.N.Y. 2013) (dismissing claim based on statute of limitation grounds where plaintiff "summarily asserts that it[] 'only recently discovered'" the defendant's alleged wrongdoing), *aff'd*, 561 F. App'x 48 (2d Cir. 2014); *see also AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 F. App'x 533 (2d Cir. 2020).

intimate part[s]" of her or her "engaging in sexual conduct," and (5) the image was published for dissemination without her consent. *See* N.Y. Civ. Rights Law § 52-b(1). Similarly, to state a claim under the NYC Revenge Porn Statute, a plaintiff must plead that: (1) defendant "disclose[d]" (2) an intimate image (3) "with the intent to cause economic, physical or substantial emotional harm" to the plaintiff, (4) the image was disclosed without plaintiff's consent, and (5) the plaintiff is identifiable in the image. *See* N.Y.C. Admin. Code § 10-180(b)(1). Thus, both statutes require: (1) the dissemination of visual media in which the plaintiff is identifiable; (2) the plaintiff is depicted in an unclothed or sexual manner; (3) the image/video is disseminated without the plaintiff's consent; and (4) the image/video is disseminated for the purpose of harassing the plaintiff or causing the plaintiff financial, physical, or emotional injury. *See* N.Y. Civ. Rights Law § 52-b(1); N.Y.C. Admin. Code § 10-180(b)(1).

In order to sufficiently plead such claims, a plaintiff cannot merely assert each element; rather, she must identify actual conduct that gives rise to a reasonable inference that each element has been met. For example, in *Mira v. Harder (Evans)*, the plaintiff, pursuant to Section 52-b, alleged that the defendants disseminated "intimate images of her on social media." *Mira v. Harder (Evans)*, 177 A.D.3d 426, 427 (1st Dep't 2019). In affirming the lower court's dismissal of the complaint, the Appellate Division found the plaintiff's allegations "unavailing" because she "fail[ed] to allege that she had personal knowledge of defendants disseminating intimate images of her . . . with the intent to harass or annoy" and her "allegations [were] conclusory and inherently incredibl[e]." *Id.* Courts in the Second Circuit likewise routinely dismiss claims that rely solely on conclusory and unsupported factual allegations. *See, e.g.*, *Ratermann v. Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657, 671 (S.D.N.Y. 2023) (dismissing privacy claim under New York Civil Rights Law where the plaintiff "fails to allege, except in conclusory fashion, that

[the defendant] was involved in any of the impermissible uses of her likeness"); *Specht v. City of N.Y.*, 15 F.4th 594, 606 (2d Cir. 2021) (affirming district court's dismissal of complaint asserting claim for intentional infliction of emotional distress where the complaint "levels only conclusory allegations that [the plaintiff] suffered emotional distress").

Plaintiff's conclusory, facially implausible, and vague allegations about the existence of a tape she has never seen, whose contents she does not describe, and whose existence was unknown to her until she became aware of a much-publicized settlement against Mr. Combs in November 2023, do not establish the requisite elements of the Revenge Porn Statutes. First, the foundational element of the statutes—that is, the existence of a video of Plaintiff allegedly being sexually assaulted twenty-four years ago—rests entirely on the sole allegation that in November 2023, following the speedy settlement of a much-publicized lawsuit against Mr. Combs, Plaintiff's former boyfriend—the same one who has reported that Plaintiff offered to bribe him three million dollars to corroborate her allegations[6]—purportedly told her that he had seen a video of her being assaulted by Defendants. AC ¶¶ 45–47. The Amended Complaint does not allege that Plaintiff has ever seen a recording of any alleged assault on her. It does not allege the length of any such recording or describe what is depicted in it.

Moreover, while Plaintiff alleges conclusorily in her cause of action section (while reciting the elements of the cause of action) that "Plaintiff was fully identifiable in the video" (*id.* ¶ 81), there are no facts alleged in her pleading to support that conclusion (to the contrary, the facts alleged—including that Plaintiff has never seen any such video—undermine it).

---

[6]    *See* Marc Griffin, *Diddy Accuser's Ex-Boyfriend Claims He Was Bribed To Corroborate Her Story*, VIBE (Oct. 9, 2024), https://www.vibe.com/news/entertainment/diddy-accuser-ex-boyfriend-bribed-thaliagraves-1234930949/.

Allegations like these are nothing more than "formulaic recitation[s] of the elements" of the cause of action that courts routinely reject as insufficient. *Bell Atl. Corp.*, 500 U.S. at 555.

Second, even if Plaintiff had adequately pled plausible facts giving rise to an inference that such a video existed (she has not), her claims would still be deficient because her allegations that Mr. Combs distributed such a video with intent to harass or cause her harm are impermissibly conclusory, including because they rely on improper group pleadings.  Plaintiff merely alleges in classic boilerplate that both Defendants "disclosed and disseminated" the alleged video "to harass, annoy, alarm, and humiliate Plaintiff and to cause her economic, physical, and/or substantial emotional harm" and that they "intentionally publicly humiliated Plaintiff."  AC ¶ 84; *see also id.* ¶¶ 47, 71, 83.

Such allegations do nothing more than recite the elements of the cause of action and are the sort of allegation that courts in the Second Circuit routinely dismiss as deficient.  *See, e.g. Specht*, 15 F.4th at 606 (affirming district court's dismissal of complaint asserting claim for intentional infliction of emotional distress where the complaint "levels only conclusory allegations that [the plaintiff] suffered emotional distress").  They also impermissibly lump both Defendants together, failing to identify any alleged conduct undertaken by Mr. Combs to support these serious accusations.  *See Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211 (NRB), 2020 WL 2748248, at *3 (S.D.N.Y. May 27, 2020) (dismissing claim for breach of fiduciary duty where allegations in the complaint impermissibly "lump[ed] defendants together without providing any factual basis for distinguishing among them"); *Elias v. City of New York*, No. 10-CV-5495 (SLT), 2010 WL 5475809, at *3 (E.D.N.Y. Dec. 30, 2010) (dismissing complaint that "attribute[d] discrimination, retaliation, and disparate treatment generally to 'Defendants,' without distinguishing their individualized conduct"); *see also Nesbeth v. New York City Mgmt.*

*LLC*, No. 17-CV-8650 (JGK), 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019) ("[I]t is well-established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes." (quoting *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 15-CV-6015, 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017))

While Plaintiff alleges (implausibly) that her ex-boyfriend told her in November 2023 that he had watched a purported recording some twenty years earlier, she does not allege that Mr. Combs disseminated it to him; and while she conclusorily asserts that on unspecified dates thereafter Defendants "widely . . . disseminate[d]" a video evidencing their apparent commission of a serious crime (AC ¶ 6), the Amended Complaint does not allege where, when, to whom, or by what means such video was purportedly distributed by Mr. Combs. Nor does Plaintiff allege that Mr. Combs ever confronted Plaintiff with any such video or otherwise took any action directed at her over the decades since the tape was purportedly made. *See generally* AC. Absent some alleged conduct purportedly reflecting that Mr. Combs did something to make Plaintiff aware of such a tape (even assuming one existed—which it did not), Plaintiff does not come close to meeting her burden of pleading facts that reasonably give rise to an inference that Mr. Combs published any such video for the purpose of "harassing, annoying or alarming," (N.Y. Civ. Rights Law § 52-b(1)) or "caus[ing] economic, physical or substantial emotional harm" to the Plaintiff (N.Y.C. Admin. Code § 10-180(b)(1)). *See Tantaros v. Fox News Network, LLC*, No. 17 CIV. 2958 (GBD), 2018 WL 2731268, at *10 (S.D.N.Y. May 18, 2018) (dismissing claim for intentional infliction of emotion distress where "Plaintiff has not alleged sufficient, non-conclusory facts showing that Defendants" acted "with [the] intent to cause Plaintiff severe emotional distress") (internal quotation marks and citation omitted)); *Josie v. City of New York*, No. 21-CV-2486 (ARR), 2023 WL 3765063, at *16 (E.D.N.Y. June 1, 2023) (same). *See also*

Wolff Decl., Ex. B at 14, 15 (explaining that the statute requires "intent . . . to cause harm" and thus does "not apply to disclosures made with an attempt to titillate, brag, or profit" and "would typically apply to a former or current intimate partner of a depicted individual who publicly discloses an intimate image to harm that individual, or threatens to do so.").

In short, there are no allegations of conduct by Mr. Combs that give rise to a reasonable inference that a video of an alleged sexual assault on Plaintiff exists, let alone that Mr. Combs was responsible for disseminating it as revenge porn to harass or harm the Plaintiff who, according to the Amended Complaint, has not had any contact with Mr. Combs whatsoever since the alleged day in question.  As such, the Amended Complaint does not state a claim under the NYC or State Revenge Porn Statutes.

## **CONCLUSION**

For all the reasons set forth above, Mr. Combs respectfully requests that the Court dismiss the Amended Complaint in its entirety with prejudice as to him and grant such other and further relief as the Court deems proper and just.

Dated: New York, New York　　　　　　　　　Respectfully submitted,
　　　　March 18, 2025

　　　　　　　　　　　　　　　　　　　　　 */s/ Erica A. Wolff*　　　　　

　　　　　　　　　　　　　　　　　　　　　Erica A. Wolff
　　　　　　　　　　　　　　　　　　　　　Michael Tremonte
　　　　　　　　　　　　　　　　　　　　　Katie Renzler
　　　　　　　　　　　　　　　　　　　　　90 Broad Street, 23rd Floor
　　　　　　　　　　　　　　　　　　　　　New York, New York 10004
　　　　　　　　　　　　　　　　　　　　　Tel.: (212) 202-2600
　　　　　　　　　　　　　　　　　　　　　Fax: (212) 202-4156
　　　　　　　　　　　　　　　　　　　　　EWolff@shertremonte.com
　　　　　　　　　　　　　　　　　　　　　MTremonte@shertremonte.com
　　　　　　　　　　　　　　　　　　　　　KRenzler@shertremonte.com

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant Sean Combs*

## <u>CERTIFICATION</u>

The undersigned hereby certifies that the the Memorandum of Law in Support of Sean Combs' Motion to Dismiss complies with the word limit set forth in Local Civil Rule 7.1(c). The word count, exclusive of the caption, tables, and signature blocks, is 6,108 according to the word-processing system used to prepare the document.

Dated:  March 18, 2025

<u>/s/ Erica A. Wolff</u>
Erica A. Wolff