UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————— x

THALIA GRAVES,                                           Case No. 24 Civ. 7201 (AT)(VF)

              Plaintiff,

       -against-

SEAN COMBS and JOSEPH SHERMAN,

            Defendants.
————————————————————————x


**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS THE AMENDED COMPLAINT**


WANG HECKER LLP
305 Broadway, Suite 607
New York, New York 10007


ALLRED, MAROKO & GOLDBERG
305 Broadway, Suite 607
New York, New York 10007


*Attorneys for Plaintiff Thalia Graves*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... …ii

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................................4

I.    Combs and Sherman's Violent Rape of Plaintiff and Animus Toward Women ...............4

II.   Passage of the Child Victims Act and the Adult Survivors Act .......................................5

III.  Passage of the VGMVPA and the 2022 Amendments ......................................................7

IV.   Procedural History .............................................................................................................9

ARGUMENT ...........................................................................................................9

I.    Legal Standards..................................................................................................................9

II.   Plaintiff's VGMVPA Claim Is Not Time Barred .............................................................9

      A.    The VGMVPA is Not Preempted on Field Preemption Grounds .........................10

      B.    The VGMVPA is Not Preempted on Conflict Preemption Grounds ...................16

III.  Plaintiff's Claims Based on the Secret, Forced Recording and Dissemination
      of the Rapes are Properly Pleaded and Not Time Barred .................................................22

      A.    The "Revenge Porn" Claims Are Not Time Barred..............................................22

      B.    Plaintiff Has Sufficiently Pleaded Her "Revenge Porn" Claims .........................24

CONCLUSION.....................................................................................................26

## **TABLE OF AUTHORITIES**

**CASES**

*Arista Records, LLC v. Doe 3,*
   604 F.3d 110 (2d Cir. 2010) ................................................................. 25

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 554 (2007) ................................................................... 9, 25

*Chwick v. Mulvey,*
   81 A.D. 3d 161 (2d Dep't 2010) ........................................................ 10, 12

*Con. Ed. Co. v. Town of Red Hook,*
   60 N.Y.2d 99 (1983) ................................................................. 12, 13

*Council for Owner Occupied Hous. v. Koch,*
   119 Misc. 2d 241 (Sup. Ct. N.Y. Cnty. 1983) ................................................ 18, 19

*DJL Rest. Corp. v. City of New York,*
   96 N.Y.2d 91 (2001) ................................................................... 15

*Doe v. Black,*
   23 Civ. 6418, 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024) ........................................ *passim*

*Doe v. Combs,*
   23 Civ. 10628, 2024 WL 4987044 (S.D.NY. Dec. 5, 2024) ...................................... 9, 10, 18

*Engelman v. Rofe,*
   194 A.D.3d 26 (1st Dep't 2021) ........................................................ 9, 15

*Garcia v. New York City Dep't of Health & Mental Hygiene,*
   31 N.Y.3d 601 (2018) ................................................................. 16

*Giuffre v. Andrew,*
   579 F. Supp. 3d 429 (S.D.N.Y. 2022) .................................................... 26

*ILC Data Device Corp. v. Cnty. of Suffolk,*
   182 A.D.2d 293 (2d Dep't 1992) ........................................................ 13

*In re Marks,*
   666 B.R. 104 (Bkrtcy. S.D.N.Y. 2024) .................................................... 25

*Kriss v. Bayrock Grp. LLC,*
   10 Civ. 3959, 2017 WL 4023351 (S.D.N.Y. Sept. 12, 2017) ……………………….....………..9

*McDonald v. New York City Campaign Fin. Bd.*,
    40 Misc.3d 826 (Sup. Ct. N.Y. Cnty. 2013) ..................................................... 19-20

*McDonald v. New York City Campaign Fin. Bd.,*
    117 A.D. 3d 540 (1st Dep't 2014)……………………………………………......……20

*Mott v. County of Monroe,*
    20 Civ. 6809, 2021 WL 2042623  (W.D.N.Y. May 21, 2021) ............................... 26

*Mulligan v. Verizon New York Inc.,*
    17 Civ. 9390, 2022 WL 17736629 (S.D.N.Y. Dec. 16, 2022)............................... 14

*New York State Ass'n for Affordable Hous. v. Council of City of New York*,
    141 A.D.3d 208 (1st Dep't 2016) ........................................................................ 16

*New York State Club Ass'n v. City of New York*,
    69 N.Y.2d 211 (1987) ........................................................................................ 11

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*,
    595 F.3d 86 (2d Cir. 2010)................................................................................... 9

*Parker v. Alexander*,
    24 Civ. 4813, 2025 WL 268436 (S.D.N.Y. Jan. 22, 2025)............................. *passim*

*People v. Cook*,
    34 N.Y.2d 100 (1974) ........................................................................................ 21

*People v. De Jesus*,
    54 N.Y. 2d 465 (1981) ....................................................................................... 13

*People v. Judiz*,
    38 N.Y.2d 529 (1976) ........................................................................................ 18

*People v. Nemadi*,
    140 Misc.2d 712 (Crim. Ct. N.Y. Cnty. 1988) .................................................... 20

*People v. Torres*,
    37 N.Y.3d 256 (2021). ....................................................................................... 22

*People v. Woods*,
    52 Misc. 3d 618 (N.Y. City Crim. Ct., May 11, 2016)......................................... 18

*Police Benevolent Ass'n of the City of New York, Inc. v. City of New York*,
    40 N.Y.3d 417 (2023) .................................................................................. 10, 16

*Saint-Jean v. Emigrant Mortgage Co.*,
129 F.4th 124 (2d. Cir. 2025) ............................................... 13

*Singleton v. Clash*,
951 F. Supp. 2d 578 (S.D.N.Y. 2013). ................................... 23

*Town of Clifton Park v. C.P. Enters.*,
45 A.D.2d 96 (3d Dep't 1974) .............................................. 16

*Vatore v. Comm'r of Consumer Affairs of City of N.Y.*,
83 N.Y.2d 645 (1994) ......................................................... 11


**STATUTES AND RULES**

22 NYCRR § 202.72…………………………………………………………………..14

CPLR 214-g……………………………………………………...…………………*passim*

CPLR 214-j………………………………………………………...…………………*passim*

Federal Rule of Civil Procedure 12(b)(6) .................................... 1, 9

N.Y.C. Admin. Code § 8-905 ........................................................ 7

N.Y.C. Admin. Code § 10-180 ................................................. 22-24

N.Y.C. Admin. Code § 10-1103 ............................................ 7, 8, 17

N.Y.C. Admin. Code § 10-1104 ............................................ 7, 8, 17

N.Y.C. Admin. Code § 10-1105 ............................................. 7, 8, 9

New York Civil Rights Law § 52-B……………………………………………22-24


**OTHER AUTHORITIES**

2020 Sess. Law News of N.Y. Ch. 130 (S. 7082)............................. 6

2021 N.Y. S. B. 66, Comm. Rep. (Feb. 12, 2022)........................ 6, 11

Committee Report of the Committee on Women and Gender Equity and the Committee on
General Welfare, November 29, 2021 on Int 2372-2021………………………………………8

N.Y. Bill Jacket, 2019 S. B. 2440, Ch. 11 (Jan. 29, 2019). ............. 5

N.Y. Bill Jacket, 2020 S. B. 7082, Ch. 130 (Jan. 8, 2020). .............................................. 6

New York Sen. Bill 66, Bill tracking, May 24, 2022. ................................................... 6

New York Senate, Stenographic Record 2705 (Apr. 26, 2022).................................... 6

Plaintiff Thalia Graves respectfully submits this Memorandum of Law in opposition to Defendants Sean Combs and Joseph Sherman's Motions to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF Doc. Nos. 52-57.

## PRELIMINARY STATEMENT

In 2001, Defendants Sean Combs and Joseph Sherman both brutally raped Plaintiff at Combs' New York City Bad Boy studio. Afterward, they repeatedly threatened her not to report the rapes, causing her to flee New York City and live in fear and silence for decades.

On November 27, 2023, mere days after New York's Adult Survivors Act ("ASA") window had closed, Plaintiff was horrified to learn from her ex-boyfriend who had worked for Combs that Combs and Sherman had videorecorded the vicious rapes, had shown the recording to others, and that there was good reason to believe it was still in circulation to this day as pornography. Newly traumatized and devastated, Plaintiff finally resolved to seek redress for the assault and Defendants' recording and dissemination of it. Fortunately, Plaintiff was able to bring this lawsuit under New York City's Victims of Gender-Motivated Violence Protection Act ("VGMVPA"), which pursuant to a 2022 amendment, had opened a two-year revival window for the specific purpose of providing survivors of gender-motivated violence in New York City with an opportunity to seek redress for past harms. Plaintiff is additionally able to seek redress for the secret recording and dissemination of the assault under state and local laws.

Defendants now seek to have the Court dismiss not only Plaintiff's claims, but to eliminate the entire VGMVPA revival window, under the argument that it is preempted by the ASA and the Child Victims Act ("CVA"). That is plainly incorrect. The ASA revived certain claims for sexual abuse and assault against adults as defined by specified New York penal laws;

1

the CVA revived certain claims for sexual abuse and assault against children as defined under other specified New York penal laws.  The VGMVPA was passed for a different specified purpose: to provide a new substantive claim for survivors of more broadly defined, gender-motivated violence in New York City.  The conduct prohibited by the different statutes is overlapping but distinct – for example, the VGMVPA applies to physical violence motivated by gender animus that does not constitute sexual assault or abuse, as well as crimes against property that risk injuring others such as burglary, robbery or arson.  There is absolutely no indication that the state legislature intended to preempt the field of local laws addressing all forms of sexual assault, let alone local laws addressing the wider issue of all forms of misogynistic violence.  Nor is there a "head-on collision" between the ASA and CVA on the one hand and the VGMVPA on the other, of the type that would support an argument for conflict preemption.  The goals of the state legislature and the New York City Council to provide survivors of sexual and other gender-motivated violence with additional time to seek redress are perfectly aligned, and New York City plainly is entitled to supplement the state revival windows with a unique and separate window specifically for survivors of gender-motived crimes of violence within its borders.  Decades of New York case law about state-level preemption of local laws makes clear that the VGMVPA is not preempted; and only one decision that provides any reasoning, *Parker v. Alexander*, 24 Civ. 4813, 2025 WL 268436 (S.D.N.Y. Jan. 22, 2025), holds otherwise.  Respectfully and as explained herein, the reasoning in *Parker* is clearly incorrect.  *See infra* at 9-22.

Defendants' arguments for dismissal of Plaintiff's other two claims based on the recording and dissemination of the video of the rapes likewise are legally meritless, as well as deeply troubling from a policy perspective.  Defendants argue that Plaintiff's claims should be dismissed because she did not see the video being recorded, cannot identify exactly what is in the

video, the length of the video, or when and where it was disseminated.  It should go without saying that the fact that the video was secretly recorded without Plaintiff's knowledge while she was tied up and had been rendered partly unconscious should not defeat her claim.  The Amended Complaint contains more than enough allegations to entitle Plaintiff to discovery: It alleges that Plaintiff was told about the video by her ex-boyfriend, who said he had been present when Combs and Sherman played it for him and other men and made derogatory comments about his relationship with Plaintiff; her ex-boyfriend likewise told her that Combs and Sherman had a pattern and practice of non-consensually recording women engaged in sexual acts and selling those recordings as pornography, a fact corroborated by another Bad Boy artist.  The Amended Complaint also incorporates the myriad other lawsuits accusing Combs of non-consensually secretly recording other sexual assaults, as well as the criminal indictment against him alleging the same.  That is more than sufficient to entitle Plaintiff to discovery to determine the specifics about where, when, and how the video was disseminated.

To hold that a survivor whose rape has been secretly recorded and circulated needs to track down and plead all of the details of the video notwithstanding that she has been told about it by a firsthand witness and has pleaded based on numerous other accounts that this was a pattern and practice of the Defendants, *at the motion to dismiss pre-discovery stage*, would render the statutes meaningless in many of the most egregious cases.  Plaintiff's claims based on the recordings likewise are timely.  The state statute allows a claim to be brought within a year of discovery of the offense, and under both the state and city laws, Plaintiff has alleged upon well-grounded information and belief that Defendants continued to disseminate the video for years after the assault and through to the present.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I.      Combs and Sherman's Violent Rape of Plaintiff and Animus Toward Women

As noted above, this case arises from the forcible and violent rape of Plaintiff by Defendant Sean Combs and Defendant Joseph Sherman in or around the summer of 2001. *See* ECF Doc. No. 47 ("AC") at ¶ 1. Plaintiff was twenty-five at the time and dating one of Combs' employees; Combs lured her into meeting both Defendants by telling her he wanted to discuss his concerns about her then-boyfriend's performance at work. *Id.* at ¶¶ 2, 21. After Defendants picked Plaintiff up in a car, they gave her a drink that led her to feel lightheaded, dizzy, and physically weak, and then drove her to the Bad Boy studio in Manhattan. *Id.* at ¶¶ 2, 22-24. Soon after arriving at the studio, Plaintiff lost consciousness. *Id.* at ¶ 24. She awoke bound and restrained. *Id.* at ¶¶ 2, 25. Defendants thereafter subjected her to brutal sexual and physical abuse, whereby Combs raped her anally and vaginally, and Sherman slapped Plaintiff and repeatedly forced his penis into her mouth. *Id.* at ¶¶ 26-32. Both Defendants subjected Plaintiff to physical violence, including slamming and smashing her head into a pool table. *Id.* at ¶¶ 3, 25, 27. This attack led to years of emotional harm, including Plaintiff's ongoing struggles with suicidal thoughts. *Id.* at ¶ 4, 37-44. Following the assault and multiple times over the ensuing years, both Combs and Sherman contacted Plaintiff and warned her to be silent, threatening repercussions including Plaintiff potentially losing custody of her son if she ever disclosed the assault. *Id.* at ¶ 40.

On November 27, 2023, Plaintiff's ex-boyfriend informed her for the first time that Combs and Sherman had video-recorded the rape and had shown the video to him and multiple other men while making derogatory comments about Plaintiff and her ex-boyfriend. *Id.* at ¶¶ 45-51. He and a Bad Boy artist both reported to her that Sherman had a practice of non-

consensually recording women engaging in sexual acts and selling and circulating the videos as pornography, demonstrating Sherman's contempt and animus toward women. *Id.* at ¶¶ 46.

Plaintiff's ex-boyfriend likewise told her that Combs also had a pattern and practice of non-consensually recording women engaging in sexual acts and making those videos available to the public, including by selling the tapes as pornography. *Id.* at ¶ 46. The Amended Complaint also details Combs' decades-long pattern and practice of violence and abuse of women, including of drugging, raping, and secretly recording them, revealing Combs' own hatred and contempt for women. *Id.* at ¶¶ 52-59. The Amended Complaint incorporates references to seven lawsuits alleging that Combs drugged other plaintiffs and five lawsuits alleging that Combs secretly recorded sexual assaults against those plaintiffs. *Id.* at ¶ 54. The Amended Complaint also incorporates the criminal indictment against Combs, which noted that Combs and his affiliates recorded sexual assaults and controlled victims through the use of drugs. *Id.* at ¶ 57.

## II.    Passage of the Child Victims Act and the Adult Survivors Act

The New York State Legislature enacted the Child Victims Act ("CVA") in 2019. The CVA revived the statute of limitations for certain civil claims in connection with specified sexual offenses in the penal codes against minors. New York Civil Practice Laws and Rules ("CPLR") § 214-g. The original revival window was open from August 14, 2019 to August 14, 2020. The Sponsor's Memorandum explained in support of the bill that "New York currently requires most survivors to file civil actions or criminal charges against their abusers by the age of 23 at most, long before most survivors report or come to terms with their abuse, which has been estimated to be as high as 52 years old on average." N.Y. State Assembly Mem. Supp. Legislation, reprinted in N.Y. Bill Jacket, 2019 S. B. 2440, Ch. 11 (Jan. 29, 2019). The original

revival window was later extended an additional year to August 14, 2021. 2020 Sess. Law News of N.Y. Ch. 130 (S. 7082) (eff. Aug. 3, 2020). This extension recognized that "victims of sexual abuse may not disclose for many years or even decades . . . . It is important to provide these victims with the time they need to disclose and to provide an opportunity for recourse." Sponsor Mem. Supp. Legislation, reprinted in N.Y. Bill Jacket, 2020 S. B. 7082, Ch. 130 (Jan. 8, 2020).

In 2022, the State Legislature enacted the Adult Survivors Act ("ASA"), which revived the statute of limitations for certain civil claims in connection with specified sexual offenses in the penal code against people over 18. CPLR § 214-j. The Adult Survivors Act revival window ran from November 24, 2022 to November 24, 2023. *Id.* Similar to the CVA, the ASA was passed to "prospectively increase . . . statutes of limitations for a subset of sexual offenses committed against adults." 2021 N.Y. S. B. 66, Comm. Rep. (Feb. 12, 2022). The Committee Report noted that "[b]oth bills [the CVA and ASA] were predicated on the widespread recognition that New York's existing statutes of limitations were insufficient in giving survivors of these heinous crimes enough time to pursue justice . . . ." *Id.* Senator Jackson, another proponent of the ASA, stated on the floor of the senate: "[W]e see child abuse survivors, young adults and older survivors, often either suppressing memories of their abuse or they are afraid to come forward right away. And by the time that adults survivors get the help that they need and finally can take action against their abusers, it's too late to do anything about it legally." N.Y. Senate, Stenographic Record 2705 (Apr. 26, 2022)). He added: "It is time to enact commonsense legislation that would do away with New York's vague statute of limitations, which denies many justice." *Id.* The ASA passed the New York Senate unanimously, and passed the New York Assembly 140 to 3. N.Y. Sen. Bill 66, bill tracking, May 24, 2022.

Both of the sponsors of the ASA – Senator Brad Hoylman-Sigal and Assemblywoman Linda Rosenthal – have expressed support for extending the ASA revival window further, noting that one year is insufficient.[1]  Senator Hoylman-Sigal likewise explained that he is currently sponsoring legislation to eliminate the civil statute of limitations entirely in child sexual assault cases.  Affidavit of Senator Brad Hoylman-Sigal, *Doe v. Black*, 23 Civ. 6418, Doc. No. 105-1, at ¶ 10 (September 26, 2024) ["Hoylman-Sigal Affidavit"].

## III.    Passage of the VGMVPA and the 2022 Amendments

In 2000, the New York City Council passed the Victims of Gender-Motivated Violence Protection Act ("VGMVPA"), specifically for the purpose of creating a civil cause of action for "crime[s] of violence motivated by gender."  N.Y.C. Admin. Code § 8-905 *et seq.*, later amended to §§ 10-1104.  "Crime of violence" is defined as:

> an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction."

N.Y.C. Admin. Code § 10-1103.  "Crime of violence motivated by gender" is defined as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender."  *Id.*  The statute provided for a seven-year statute of limitations and for specific relief and penalties, such as compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees and costs, and other remedies.  *Id.* at §§ 10-1104, 10-1105.

---

[1] Kate Lisa, *Adult Survivors Act sponsors support 1-year extension*, SPECTRUM LOCAL NEWS, Nov. 21, 2023 (last accessed April 11 2025), *available at* https://spectrumlocalnews.com/nys/central-ny/politics/2023/11/22/both-adult-survivors-act-sponsors-support-1-year-extension.

In 2022, the City Council amended the VGMVPA.  The amendment expanded liability under the law, extending it from individuals to parties that "commit[], direct[], enable[], participate in[], or conspire[] in the commission of a crime of violence motivated by gender."  *Id.* at § 10-1104; L.L. 21/2022 § 1, eff. Jan. 9, 2022.  The amendment also explicitly revived claims that had previously expired, stating that "[n]otwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022.  N.Y.C. Admin. Code § 10-1105; L.L. 21/2022 § 1, eff. Jan. 9, 2022. This revival window thus ran from March 1, 2023 to March 1, 2025.  *Id.*

The Committee Report on the 2022 amendment made clear that its purpose was to continue to address gender-motivated violence, both sexual *and* physical, in New York City. Committee Report of the Committee on Women and Gender Equity and the Committee on General Welfare ["2021 VGMVPA Committee Report"], November 29, 2021 on Int 2372-2021. The Report provided data about the impact of the pandemic on gender-motivated violence within New York City in particular, discussed the problem of gender-motivated homicides in the city, analyzed the connection between domestic violence and homelessness and discussed the city's domestic violence shelter system, and presented other issues specific to gender-based violence within New York City.  *Id.*  The committee report concluded that the amendment, in addition to expanding who is liable under the statute, "would give survivors of gender-motivated acts of violence more time to pursue civil actions."  *Id.*

## IV.    Procedural History

Plaintiff filed this action on September 24, 2024, well within the two-year revival window of the VGMVPA.  *See* ECF Doc. No. 1 (Complaint); NYC Admin. Code. § 10-1105. Defendants filed motions to dismiss on March 18, 2025.  *See* ECF Doc. Nos. 52-57.

## ARGUMENT

## I.    Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a case must be dismissed if it fails to state a claim upon which relief can be granted.  To survive such a motion, a complaint "must allege a plausible set of facts sufficient to raise a right to relief above the speculative level."  *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010).  "[T]he complaint must 'nudge[]' claims 'across the line from conceivable to plausible.'"  *Kriss v. Bayrock Grp. LLC*, 10 Civ. 3959, 2017 WL 4023351, at *2 (S.D.N.Y. Sept. 12, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

## II.    Plaintiff's VGMVPA Claim Is Not Time Barred

Defendants' arguments that the ASA and CVA together preempt the VGMVPA's revival window are meritless.  To the contrary, the 2022 Amendments to the VGMVPA fall well within New York City's power to adopt local laws pertaining to the "conduct, safety, health and well-being of persons" and are not inconsistent with the state constitution or general state laws. *Doe v. Black*, 23 Civ. 6418, 2024 WL 4335453 ("*Black*"), at *3 (S.D.N.Y. Sept. 27, 2024); *see also Doe v. Combs*, 23 Civ. 10628, 2024 WL 4987044 (S.D.NY. Dec. 5, 2024); *cf. Engelman v. Rofe*, 194 A.D.3d 26, 31 (1st Dep't 2021) ("The [VGMVPA]'s construct is consistent with the City's "broad policing power" to enact legislation to protect its residents from discrimination, including gender-related violence").  The VGMVPA revival windows are not preempted on

either field preemption or conflict preemption grounds, as Judge Clarke has now held twice. *See Black*, 2024 WL 4335453, at *3-7; *Doe v. Combs*, 2024 WL 4987044, at *2.

A.    **The VGMVPA is Not Preempted on Field Preemption Grounds**

To find that a local law is prohibited on the basis of field preemption, it must be shown that the state legislature has "assumed full regulatory responsibility" for a particular subject matter, and that the local law "either 'prohibits conduct which the [s]tate law . . . considers acceptable or at least does not proscribe or . . . imposes additional restrictions on rights granted by [s]tate law.'" *Police Benevolent Ass'n of the City of New York, Inc. v. City of New York*, 40 N.Y.3d 417, 423 (2023).   Field preemption may be express – where there is an "express statement in the state statute [that] explicitly avers that it preempts all local laws on the same subject matter;" based on "a declaration of State policy evinc[ing] the intent of the Legislature to preempt local laws on the same subject matter;" or implicit, in which "the Legislature's enactment of a comprehensive and detailed regulatory scheme in an area in controversy is deemed to demonstrate an intent to preempt local laws." *Chwick v. Mulvey*, 81 A.D. 3d 161, 169-70 (2d Dep't 2010).

Defendants do not appear to even argue for express or policy-based field preemption, seemingly conceding, correctly, that neither doctrine applies here.  As Judge Clarke noted in *Black* while squarely holding that the CVA did *not* preempt the VGMVPA's revival window, "t[]he state has made no statements evincing a desire to fully control the issue of statutes of limitation in child sexual offense cases," *Black*, at *4, nor have Defendants pointed to any statements evincing a comparable desire regarding adult sexual offense cases.

Likewise, none of the state's declarations regarding the policy of the ASA and CVA evince a desire to preempt local laws providing survivors with opportunities to seek justice;

to the contrary, the legislative history consistently discusses the goal of providing "survivors of these heinous crimes enough time to pursue justice."  2021 N.Y. S.B. 66, Comm. Rep; *see generally supra* at 5-7 (discussing the extensive legislative history on this point).  The legislature's statements about its intention to benefit child and adult sexual assault victims are "not the same as 'an expression of need for uniform State-wide control.'"  *Black*, at *4 (quoting *Vatore v. Comm'r of Consumer Affairs of City of N.Y.*, 83 N.Y.2d 645, 650 (1994)).  The VGMVPA instead complements and serves the same purposes as the CVA and ASA much like the New York City Human Rights Law ("NYCHRL") complements and serves the same purposes as the New York State Human Rights Law ("NYSHRL") even as those laws "overlap[] substantially."  *Id.*, *see also New York State Club Ass'n v. City of New York*, 69 N.Y.2d 211, 218 (1987) (affirming in that context that "the State has not preempted the field of antidiscrimination legislation by enacting the human rights provisions of the Executive Law (§ 290 *et seq.*")), *aff'd* 487 U.S. 1 (1988).

Defendant Combs relies heavily on a phrase in the ASA stating that its revival window applies "[n]otwithstanding any provision of law which imposes a period of limitations to the contrary."  Memorandum of Law in Support of Sean Combs' Motion to Dismiss the Amended Complaint, ECF Doc. No. 55 ("Def. MOL") at 8 (quoting *Parker*, 2025 WL 268436, at *3 and  N.Y. CPLR § 214-j).[2]  Defendants' attempt to twist that language to support dismissal of Plaintiff's claims misconstrues the purpose and scope of the statutes at issue, and thus the point of that phrase.  The ASA was passed to "prospectively increase . . . statutes of limitations for a subset of sexual offenses committed against adults" and as noted, to thereby provide

---

[2] Defendant Joseph Sherman has not made any independent arguments in his motion to dismiss, but instead has adopted and relied upon Defendant Combs' briefing, filing essentially a copy of Combs' brief.  *See* ECF Doc. Nos. 56-57.  We therefore cite to Combs' MOL throughout.

"survivors of these heinous crimes enough time to pursue justice," 2021 N.Y. S. B. 66, Comm. Rep.  The phrase Defendant quotes does just that, ensuring that the ASA's revival provisions are *not limited* by a more restrictive statute.  Nothing in the ASA evinced an intention to prevent survivors from bringing claims specifically tied to gender-motivated violence, under a different statute with a less restrictive statute of limitations, solely because there is some overlap between the conduct covered by the statutes.  Such an interpretation would flout the express purposes of both the ASA and the CVA.

Co-sponsoring Senator Brad Hoylman-Sigal in fact recently made explicit that "the Child Victim's Act was never intended to preempt any other laws, including the VGMVPL."  *See* Hoylman-Sigal Affidavit at ¶ 4.  Senator Hoylman-Sigal wrote that "[i]t was always the legislative intent to, among other things, ensure that the law allows survivors to come forward and seek justice whenever they are comfortable and safe to do so, regardless of how many years have elapsed."  *Id.* at ¶ 9.  As noted above, Senator Hoylman-Sigal is currently sponsoring legislation to eliminate the civil statute of limitations entirely in child sexual assault cases.  *Id.* at ¶ 10.

Despite Defendants' strained efforts, implicit field preemption likewise does not apply.  Neither the CVA nor the ASA enacted a "comprehensive and detailed regulatory scheme" demonstrating an intent to preempt local laws.  *Chwick*, 81 A.D.3d at 170.  As Judge Clarke held, the CVA (and likewise the ASA) "does not come close to enacting a comprehensive scheme" of the type that led prior courts to find field preemption when faced with detailed and complex regulations regarding steam electric generating facilities, employee safety standards and procedures, or liquor licensing and enforcement procedures.  *Black*, 2024 WL 4335453, at *6. For example, in *Con. Ed. Co. v. Town of Red Hook*, 60 N.Y.2d 99 (1983), which held that a state

12

law preempted the field with respect to the siting of steam electric generating plants, the state

law explicitly stated that prior "un-co-ordinated regulation" had resulted in construction delays

and cost increases and that there was "a need for the state to control" the complex siting

determinations. *Id.* at 105. The state regulations thus provided for a single decision-maker to

coordinate decisions about siting and for detailed and unified procedures about the application

and decision-making process. *Id.* at 103. Other cases in which courts have found field

preemption likewise involve complex regulatory schemes. *See, e.g.*, *People v. De Jesus*, 54 N.Y.

2d 465, 469 (1981) (the state's Alcoholic Beverage Control Law preempted the field regarding

laws about the hours of alcohol establishments because it endowed the State Liquor Authority

with the power to grant licenses under defined circumstances, provided for criminal sanctions for

unauthorized purveyors of alcohol, and imposed its own direct controls at the local level by

creating local control boards); *ILC Data Device Corp. v. Cnty. of Suffolk*, 182 A.D.2d 293, 301

(2d Dep't 1992) (the "comprehensive regulatory scheme embodied in the Labor Law and vesting

of broad rule-making and enforcement authority in the state Commissioner of Labor," including

"the expansive authority to engage in inspections, investigations, and enforcement" made clear

that the state had preempted the field of employee safety in the workplace).

There is no such "need for the state to control" opportunities to bring claims for

sexual assault, and "un-co-ordinated" revival windows will hardly result in the chaos referenced in

*Con Ed* or of concern in similar cases. Different time periods for bringing overlapping claims co-

exist all the time without issue; to give just one example, when a plaintiff sues for housing

discrimination within New York City, a federal Fair Housing Act claim based on that conduct must

be filed within two years, but the significantly overlapping claims under the New York State and

New York City Human Rights Laws can be brought within three years. *See Saint-Jean v.*

13

*Emigrant Mortgage Co.*, 129 F.4th 124, 140 (2d. Cir. 2025) (citing 42 U.S.C. § 3613(a)(1)(A) and N.Y. CPLR § 214) (FHA and NYCHRL); *Mulligan v. Verizon New York Inc.*, 17 Civ. 9390, 2022 WL 17736629, at *2 (S.D.N.Y. Dec. 16, 2022) (citing N.Y. CPLR § 214(2)) (NYSHRL).  The same is true for employment discrimination laws, where federal, state, and local laws co-exist.

The court's analysis in *Parker v. Alexander*, which equated the ASA and CVA's revival windows with comprehensive regulatory schemes such as the one that governs the procedures, hearings, and decision-making processes for construction of dangerous facilities, is difficult to reconcile with preemption case law.  *See Parker*, 2025 WL 268436, at *2-3.  The ASA and CVA do not even contain stand-alone causes of action, much less comprehensive regulatory schemes that would conflict with regulations imposed by a local law.

Defendants try to conjure a "comprehensive and detailed regulatory scheme," out of a minor provision in the judicial law which instructed the chief administrator of courts to promulgate rules for adjudicating revived actions brought pursuant to the CVA and the ASA. *See* Def. MOL at 7-8 (citing N.Y. Jud. L. §§ 219-d and 219-e).  While Defendants argue that state courts "implemented a comprehensive infrastructure for litigating CVA and ASA cases," the only example they give is 22 NYCRR § 202.72, a rule that mandated dedicated parts in New York State Supreme Courts to hear CVA cases, training of justices and other neutrals, and laid out a fast track for CVA cases.  *Id.*  They point to no independent scheme at all for ASA cases, since there is none.  The implementation of the CVA court rules, essentially comprising best practices to assist in managing CVA cases in state court, obviously does not constitute a comprehensive *regulatory* scheme of the type that has led courts to find field preemption, and is not even remotely pertinent in any event to the ASA.  CVA cases filed in federal court routinely are litigated outside the CVA parts without issue, along with claims of more recent instances of

child sexual abuse, claims based on sexual abuse of adults, whether brought under the ASA or other laws, and VGMVPA claims.

The First Department's decision in *Engelman v. Rofe*, 194 A.D.3d 26 (1st Dep't 2021) also reaffirms that the VGMVPA's revival window is not field preempted. The *Engelman* court addressed a closely related question – whether the VGMVPA's original seven-year statute of limitations was preempted by the one-year statute of limitations for assault and battery under New York State law. The Court squarely rejected defendants' argument that the state had intended to preempt the field with respect to statute of limitations for the covered offenses. It held that the VGMVPA's "construct is consistent with the City's 'broad policing power' to enact legislation to protect its residents from discrimination, including gender-related violence" and that the longer limitations period in the VGMVPA is not preempted. 194 A.D.3d at 31-32. While the case did not address the VGMVPA's revival provision specifically, Defendants are wrong that the case has no relevance – a New York appellate court found that a state law addressing the statute of limitations for sexual assault claims *did not* preempt a longer statute of limitations within the VGMVPA's statutory text, which strongly supports the same result here.

Finally, even were the Court to find that the ASA and/or CVA serve to implement a regulatory scheme for the revival of sexual assault civil claims, which they have not, the VGMVPA's *separate* revival provision for statutory claims brought under the VGMVPA would not be preempted because of the differences in the purposes and content of the statutes. *See, e.g.*, *DJL Rest. Corp. v. City of New York*, 96 N.Y.2d 91, 95-96 (2001) (holding that while it was "well settled that the State's ABC Law [which had its own provisions governing nudity and the placement of adult establishments] impliedly preempts its field," a local zoning law requiring adult establishments to be confined to certain districts was not preempted because the laws had

different focuses).  Yes, there is substantial overlap in the subject matter covered by the statutes – many sexual assaults will be prohibited by either the ASA and the CVA and also by the VGMVPA – but that is not sufficient.  "[T]he mere fact that a local law may deal with some of the same matters touched upon by [s]tate law does not render the local law invalid."  *Police Benevolent Ass'n of City of New York*, 40 N.Y.3d at 425.  The VGMVPA's much broader provisions, invoking federal as well as state crimes, and including general misogynistic violence and property crimes in addition to sexual assaults, are different.

### B.    The VGMVPA Is Not Preempted on Conflict Preemption Grounds

The ASA and CVA likewise do not preempt the VGMVPA's revival provision through conflict preemption.

"Under the doctrine of conflict preemption, a local law is preempted by a state law when a right or benefit is expressly given . . . by . . . State law which has then been curtailed or taken away by the local law."  *New York State Ass'n for Affordable Hous. v. Council of City of New York*, 141 A.D.3d 208, 214-15 (1st Dep't 2016) (internal quotation omitted).  The "fact that both the state and local laws seek to regulate the same subject matter does not in and of itself give rise to an express conflict," *Black*, at *6 (quoting *Garcia v. New York City Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 617 (2018)); there must be a "head-on collision" between the statutes, *New York State Ass'n for Affordable Housing*, 141 A.D.3d at 215.  *See also Town of Clifton Park v. C.P. Enters.*, 45 A.D.2d 96, 97 (3d Dep't 1974) (noting that "[t]o define the word 'inconsistent' narrowly as meaning merely 'different' would vitiate the flexibility of home rule").

The VGMVPA revival window plainly "does not curtail or take away a right or benefit expressly given by the state," *Black*, 2024 WL 4335453, at *6; instead, as discussed

above, the statutes unquestionably "further the same goals" of "further[ing] civil rights causes of action" and of giving survivors of sexual abuse and gender-motivated violence "more time to pursue civil actions by extending the statute of limitations." *Id.* at *7.

A close look at the ASA, CVA, and VGMVPA confirms that there is no direct conflict between them. As noted, the conduct prohibited by the statutes does not even fully overlap. The VGMVPA prohibits *any and all* crimes of violence motivated by gender in New York City, while the CVA and ASA address only conduct that would violate certain specified New York State penal laws for certain sexual offenses. *See* N.Y.C. Admin. Code §§ 10-1103, 10-1104; CPLR 214-g; CPLR 214-j. The VGMVPA applies to violent acts that do not constitute offenses under the laws pertaining to sexual assault, including to acts that may not involve a sexual assault at all. Sherman and Combs separately slamming Plaintiff's face down on a pool table and Sherman slapping Plaintiff in the face are examples of gender-motivated violence that do not in and of themselves constitute violations of the penal laws invoked by the ASA and CVA. *See* AC at ¶¶ 25, 27, 30. The VGMVPA also covers certain property crimes that likewise do not comprise sexual assaults. *See* N.Y.C. Admin. Code § 10-1103. For example, burglary, robbery, theft, vandalism, or arson would all qualify if the conduct poses a serious risk of injury and is motivated by misogyny. Moreover, the VGMVPA provides its own cause of action with specific types of relief including compensatory and punitive damages, injunctive and declaratory relief, and attorneys' fees and costs, whereas the ASA and CVA merely revived the statute of limitations for other civil claims. *Compare id.* at § 10-1104 *with* CPLR 214-g; CPLR 214-j. Given that the statutes address different categories of offenses and provide different remedies,

Defendants' focus on the differing and "conflict[ing]" revival windows is simply off base. Def. MOL at 9-12.[3]

Courts routinely uphold local laws that address a particular concern against challenges on both field and conflict preemption grounds, notwithstanding state laws that address much of the same subject matter. In *People v. Judiz*, 38 N.Y.2d 529 (1976), the Court held that a local law prohibiting the possession of certain realistic toy or imitation pistols was not preempted by state laws that covered the regulation of toy or imitation guns. The Court held that "while State law evinces an intent to cover, quite broadly, most of the possible categories of weapons for which it deems some sanction is necessary when these are used with illegal intent, the city ordinance is aimed at the prevention of a *particular type of abuse*." *Judiz*, 38 N.Y.2d at 532 (emphasis added) (referring to the particular concern about realistic guns that could be mistaken for real guns). *See also People v. Woods*, 52 Misc. 3d 618, 625 (N.Y. City Crim. Ct., May 11, 2016) ("Where state law evinces an intent to cover a category broadly, and the city ordinance is aimed at the prevention of a *particular* type of abuse, it follows that State law is neither at odds with, or exclusive of, the ordinance in question.") (emphasis in original). Here, too, while the ASA and CVA aim to cover most categories of sexual assault offenses, the VGMVPA is expressly aimed at the prevention of a "particular type of abuse" – gender-motivated crimes of violence within New York City.

Similarly, in *Council for Owner Occupied Hous. v. Koch*, 119 Misc. 2d 241 (Sup. Ct. N.Y. Cnty. 1983), the Court rejected the argument that a city law that placed additional

---

[3] For the same reasons, Defendants' and Judge Kaplan's rejection of Judge Clarke's holdings in *Doe v. Combs* and *Doe v. Black* on the basis that Judge Clarke only addressed whether the CVA preempted the VGMVPA is beside the point. *See* Def. MOL at 9. While the CVA and ASA together cover more conduct than the CVA alone, they still do not cover all conduct under the VGMVPA or specifically address the local policy issues the VGMVPA was passed to address.

requirements on co-op and condominium conversions was preempted by a provision of a state law that was directed at specifically regulating conversions within New York City. The court explained: "although it does impact on an area regulated by the State, [the local law] is an attempt to preserve existing housing stock and to afford greater protections to tenants . . . . Clearly this is a legitimate government concern . . . [it] supplements the State regulatory process and implicit therein is a recognition that additional government control is necessary." *Id.* at 245-46.

In *McDonald v. New York City Campaign Fin. Bd.*, 40 Misc.3d 826 (Sup. Ct. N.Y. Cnty. 2013), *aff'd* as modified, 117 A.D. 3d 540 (1st Dep't 2014), the Court again rejected a preemption challenge, this time to a local law that imposed more restrictive campaign contribution limits than the limits in the state regularly scheme. In that case the plaintiff argued that because the state law "promulgates such a detailed scheme of contributions for these positions . . . it is clear that the State intended to preempt this area." *Id.* at 844. The Court rejected this argument, finding that "the areas of State and Local Law are not inconsistent, but complementary," and that they "actually supplement each other." *Id.* at 849-50.

The Court rejected the plaintiff's argument that more restrictive contribution limits at the local level were inconsistent with the state's higher limits because the state had considered and rejected public funding, and instead chose to set the higher contribution limits. *Id.* at 840-41. Similarly here, Defendants effectively ask this Court baselessly to presume, from the state's choice to open particular revival windows, that the state did not intend to allow *any* other revival windows, and did not intend to allow opportunities for survivors to seek redress at the local level. But as with the different limits in *McDonald*, the City's choice to open a revival window for gender-motivated crimes of violence in fact *complements and supplements* the very

19

goals expressed by the state legislature in enacting the ASA and the CVA, to allow survivors to come forward and seek justice.  The differences in the revival windows (and of course the differences as well in the claims and the remedies that can be brought within those windows), do not render the laws conflicting.  *McDonald*, 40 Misc.3d at 836 (noting favorably defendants' argument that "just because a local law *differs* from a state law, does not necessarily mean it is *inconsistent* with State law.") (emphasis in original).  The First Department in *McDonald* affirmed, holding that the more restrictive local limits were not inconsistent with the state law "[i]n light of the Election Law's purpose of bolstering public confidence in the election process by restricting contributions."  117 A.D.3d 540, 541 (1st Dep't 2014).  Similarly, in light of the ASA and CVA's stated purposes of providing sexual assault survivors more time to seek redress for assaults, the VGMVPA's additional opportunities to seek redress for specified gender-motivated crimes including certain types of sexual assaults are not inconsistent with any legislative objective of the ASA and/or CVA.

Finally, even were the VGMVPA found to be inconsistent with the ASA and CVA, which it is not, it should be upheld because it was "designed to deal with a specific local problem."  *See People v. Nemadi*, 140 Misc.2d 712 (Crim. Ct. N.Y. Cnty. 1988) (holding that New York City's law requiring window guards in particular apartments was not preempted by the arguably inconsistent state sanitary code because "New York City suffers a unique problem in the sheer numbers of children at risk, and large multi-story dwellings suffering managerial neglect").  The Court noted that "additional government control [wa]s necessary to meet the special housing problems existing in the City of New York . . . thus, *even if the Window Guard Rules were inconsistent, the City has addressed a special condition distinct in its intensity and volume from that found elsewhere in the State.*"  *Id.* at 720-21 (emphasis added).  *See also*

*People v. Cook*, 34 N.Y.2d 100, 109-110 (1974) (noting that a local law will be upheld "despite the inconsistency" with state law if there are "special conditions existing in the city"). Gender-motivated violence obviously is not a problem unique to New York City, just as children falling out of windows is not a problem unique to New York City. *See id.* ("There is no requirement that a local law be a response to a uniquely local situation."). But the VGMVPA, like the local law pertaining to window guards, was passed to address what the City Council identified as a particularly intense and pervasive problem within its borders. *See generally*, 2021 VGMVPA Committee Report.[4]

The court's holding in *Parker v. Alexander* that the revival windows conflict based on their differing date ranges warrants reconsideration in light of these relevant authorities. That court held that "[t]he ASA . . . is unambiguously inconsistent with the start date of the VGMVPL revival window because the ASA specifically 'permit[s] the conduct the local law' does not – bringing VGMVPL claims between November 24, 2022, and March 1, 2023," 2025 WL 268436, at *3. This declaration is difficult to comprehend because obviously the VGMVPA's revival window – which provides additional opportunities for certain survivors to seek justice – does not prohibit anything that the ASA permits. An individual with claims under

---

[4] Defendants' argument that "even the plaintiffs' bar understood that the [VGMVPA] Revival Provision would not operate to revive sexual assault claims outside the State's revival windows," based on the fact that there were a large number of cases filed under the ASA prior to the expiration of the ASA window, is frankly absurd. Def. MOL at 11, n.3. Defendants argue that "If the New York City plaintiffs' bar actually believed the [VGMVPA's] revival provision could revive otherwise time-barred sexual assault claims . . . they would not have rushed to file their claims within the state law revival window." *Id.* To state the obvious, Plaintiffs' lawyers routinely file cases on behalf of clients with several different live claims, such as for violations of federal, state, and local human rights and antidiscrimination laws. No conscientious attorney would knowingly allow one claim to expire simply because other claims have longer statutes of limitations. This is equally true when the claims overlap fully in terms of the relevant prohibited conduct and available remedies, as is often the case with antidiscrimination laws.

both statutes of course could still have brought her ASA claim between November 24, 2022 and March 1, 2023. The fact that many such individuals would have chosen – because of their additional VGMVPA claims – to hold off and file *both* claims on March 1, 2023 did not "prohibit" them from doing anything. The *Parker* court's statement appears to be an attempt to apply the conflict preemption principle that "[f]or a local law to be invalid pursuant to the conflict preemption doctrine, the State must specifically permit the conduct the local law prohibits" *Id.* at *2 (quoting *People v. Torres*, 37 N.Y.3d 256, 268 (2021)). But any effort to apply that principle plainly fails. Despite Judge Kaplan's statement, the VGMVPA clearly does not take away any rights from survivors, but merely provides more opportunities for them to seek justice. (In contrast, of course, overturning the VGMVPA's revival window would "prohibit" the survivor in question from pursuing that claim.) Moreover, the Court's reference to the *ASA* "permit[ting] . . . bringing VGMVPL claims" misapprehends the significant differences in the conduct covered by the laws. The ASA does not, for example, permit bringing a claim for a gender-motivated homicide, prior to March 1, 2023 or otherwise.

For all of the reasons articulated above, there is plainly no "head-on conflict" between these different opportunities; they are instead aligned and complementary.

## III. Plaintiff's Claims Based on the Secret, Forced Recording and Dissemination of the Rapes are Properly Pleaded and Not Time Barred

### A. The "Revenge Porn" Claims Are Not Time Barred

Plaintiff has also sufficiently pleaded her claims under N.Y. Civil Rights Law § 52-b and N.Y.C. Admin. Code § 10-180 and is entitled to discovery regarding how and when the video of her rapes was circulated.

First, her claims under these statutes are not time barred. Defendants concede that pursuant to N.Y. Civil Rights Law § 52-b, a claim can be brought either within three years after

the dissemination or publication or "one year from the date a person discovers, or reasonably should have discovered, the dissemination or publication of such image."  52-b(6); Def. MOL at 13, n.4.  Plaintiff has clearly alleged that she learned of the existence of the video when her ex-boyfriend informed her of it on November 27, 2023 and told her that Defendants had showed the video to him and several others while making derogatory comments about her. AC at ¶¶ 45-47.  This plainly qualifies as the date of discovery.[5]  She filed her case 10 months later, on September 24, 2024.  ECF Doc. No. 1.  Describing Plaintiff's allegation about the discovery date as "self-serving and facially implausible" does not make it so.  Def. MOL at 13, n.4.  Discovery will show that documentary evidence and multiple witnesses corroborate her uncovering of the existence of the video on that date.  Nor is Plaintiff's claim under N.Y.C. Admin. Code § 10-180 time barred.  Plaintiff's allegations that "[o]n information and belief, Defendants continued to show the video of the rape to others over the years and through to the present and/or sold the video as pornography," AC at ¶ 48, is not "impossibly vague" (Def. MOL at 13, n.5).  Instead it is based on multiple witness accounts that Sherman and Combs had a pattern and practice of selling non-consensually recorded videos of sexual encounters as pornography, as well as several accounts of Combs secretly recording forced sexual encounters.  *See* AC at ¶¶ 46, 54, 57.

---

[5] Defendants argue that Plaintiff has not pleaded that she "actually 'discover[ed]'" the video's dissemination or publication on that date, presumably because she does not allege that she saw the actual video.  Def. MOL at 13, n.4.  But under the discovery rule, "a claim accrues when a plaintiff comes into possession of the 'critical facts that [s]he has been hurt and who inflicted the injury."  *Singleton v. Clash*, 951 F. Supp. 2d 578, 587-88 (S.D.N.Y. 2013).  The key is having "inquiry notice" of the injury, *id.*, and being told about the existence of a video of one's rape by someone with whom it was shared clearly qualifies.

**B.       Plaintiff Has Sufficiently Pleaded Her "Revenge Porn" Claims**

Plaintiff has more than sufficiently pleaded her claims under N.Y. Civil Rights

Law § 52-b and N.Y.C. Admin. Code § 10-180.[6]  Specifically, Plaintiff has pleaded that "on or

around November 27, 2023 . . . she learned for the first time that Combs and Sherman had video-

recorded the horrific rape twenty-two years before and had shown the video to multiple men,

seeking to publicly degrade and humiliate both Plaintiff and her boyfriend;" AC at ¶ 5; that her

former boyfriend detailed to her how he had been present when Sherman and Combs "showed

him and a group of men . . . the video of Plaintiff being raped," "on a handheld camera . . . at the

Bad Boy studio" and that "Combs, Sherman, and some of the other men made derogatory

comments about the former boyfriend's relationship with Plaintiff, in an attempt to shame him

into cutting ties with Plaintiff and to cause her further emotional harm and embarrassment." *Id.*

at ¶¶ 46-47.  Plaintiff has alleged that her former boyfriend disclosed to her that "Combs and

Sherman had a pattern and practice of non-consensually recording women engaging in sexual

acts and making those videos available to the public, including by selling tapes as pornography"

and that a different "Bad Boy artist later corroborated in a text message that Sherman 'use[d] to

sell porn of him doing this to chix' and 'did that to a lot of women.'" *Id.*  Moreover, the

Amended Complaint incorporates facts from several other lawsuits alleging that Combs had a

pattern and practice of secretly recording sexual assaults, *see* AC at ¶¶ 54(a); 54(b); 54(e); 54(f);

---

[6] Defendants appear to imply that the statutes only apply to the dissemination of explicit images within intimate relationships, citing and attaching the legislative history of the city bill.  *See* Def. MOL at 14.  Yet while that was in fact a central goal of the legislation, the plain text of the statutes clearly sweeps more broadly, and have been applied more broadly accordingly.  *See, e.g. In re Marks*, 666 B.R. 104, 109 (Bkrtcy. S.D.N.Y. 2024) (noting the statutes' application to a situation where the plaintiff's boyfriend's female roommate disseminated images of her).

54(g), and showing the videos to others, *see id.* at ¶ 54(f).  It also incorporates the allegations in

the criminal indictment against Combs that "Combs and his affiliates recorded sexual assaults."

*Id.* at ¶ 57.[7]  Based on all of this, Plaintiff alleged on information and belief that "Defendants

continued to show the video of the rape to others over the years and through to the present and/or

sold the video as pornography."  *Id.* at ¶ 48.

        These facts provide the basis for all elements of the offenses.  The allegation that

an eyewitness informed Plaintiff that a "video of Plaintiff being raped" was shared with him and

others provides ample, concrete support for the allegation that a video of plaintiff depicting her

"unclothed," "exposed" and "engaged in sexual activity" in which she was "identifiable" was

disseminated without her consent, and his statement to her that both defendants made derogatory

comments about the ex-boyfriend and Plaintiff clearly support the allegation that the video was

disseminated to harass, annoy, and/or alarm her or to cause her substantial emotional harm.  This

is more than sufficient at this early stage of litigation.  *See Arista Records, LLC v. Doe 3*, 604

F.3d 110, 120 (2d Cir. 2010) (holding that the *Twombly* plausibility standard "does not prevent a

plaintiff from 'pleading facts alleged 'upon information and belief'' where the facts are

peculiarly within the possession and control of the defendant . . . or where the belief is based on

factual information that makes the inference of culpability plausible.") (internal citations

---

[7] Defendants argue that the pleadings "impermissibly lump both Defendants together, failing to identify any alleged conduct undertaken by Mr. Combs to support these serious accusations." Def. MOL at 17.  That is false – the Amended Complaint alleges that Plaintiff's ex-boyfriend told her that Combs and Sherman *both* showed him and others the video, *both* made derogatory comments about him and Plaintiff, and *both* had a pattern and practice of non-consensually recording women engaged in sexual acts and making those videos available to the public, including as pornography.  AC at ¶¶ 46 ("Sherman and Combs had showed him…"; "Combs and Sherman had a pattern and practice . . . "); *id.* at 47 ("Combs, Sherman, and some of the other men made derogatory comments . . . ").  Multiple other allegations also outline the pattern and practice of *both* Defendants, separately, of non-consensually recording and/or distributing videos of sexual assaults.  *See* AC at ¶¶ 46, 54(a), 54(b), 54(e), 54(f), 54(g), 57.

omitted).  The Amended Complaint alleges that Defendants secretly recorded Plaintiff's rape after rendering her mostly unconscious and disseminated the video, including as pornography, without Plaintiff's consent, and until November 27, 2023, without her knowledge.  This is a quintessential case in which the facts alleged are "peculiarly within the possession and control of the defendant[s]."  *Id.*[8]

Defendants place great reliance on a news article stating that Plaintiff's ex-boyfriend told reporters that he interpreted a text message from Plaintiff as a bribe.  *See* Def. MOL at 1, 4, 16.  Yet nowhere do they provide any indication that Plaintiff's ex-boyfriend denied telling Plaintiff about the video, or denied that it existed and that he had in fact seen it. More fundamentally, questions regarding Plaintiff's or her ex-boyfriend's credibility and motives – which will be explored during discovery and tested at trial – are not appropriate at the motion to dismiss stage.  *See Giuffre v. Andrew*, 579 F. Supp. 3d 429, 433 (S.D.N.Y. 2022) (noting that allegations regarding "credibility and motives" and "the truth or falsity of charges in [the] complaint" are not appropriate on a motion to dismiss).

## CONCLUSION

Defendants' arguments for dismissal of the Amended Complaint are all without merit.  The Court should deny Defendants' Motions to Dismiss in full.

---

[8] Moreover, the fact that Plaintiff has based these allegations on what her ex-boyfriend and others told her is more than sufficient at this stage to plead facts on information and belief.  *Mott v. County of Monroe*, 20 Civ. 6809, 2021 WL 2042623, at *4 (W.D.N.Y. May 21, 2021) ("When a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying, but acknowledging that his allegations are based on secondhand information that [he] believes to be true.").

Dated: New York, New York
       April 15, 2025

WANG HECKER LLP

By: Heather Gregorio
    Mariann Wang
    305 Broadway, Suite 607
    New York, New York 10007
    (212) 620-2603

ALLRED MAROKO & GOLDBERG
Gloria Allred
305 Broadway, Suite 607
New York, New York 10007
(212) 202-2966

*Attorneys for Plaintiff*

**ATTORNEY CERTIFICATION PURSUANT TO RULE III(D) OF THE COURT'S INDIVIDUAL RULES IN CIVIL CASES**

I, Heather Gregorio, an attorney duly admitted to practice law before the courts of the Southern District of New York, hereby certify that this memorandum of law complies with the word count limit set forth in Rule III(D) of the Court's Individual Rules in Civil Cases because it contains **8,681 words**, not including the parts of the memorandum excluded under the Rule.  In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum.

Dated:  April 15, 2025
      New York, New York


         /s/  Heather Gregorio_____
           Heather Gregorio